Lionel Z. Glancy (#134180)
Robert V. Prongay (#270796)
Lesley F. Portnoy (#304851)
Charles H. Linehan (#307439)
Pavithra Rajesh (#323055)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Douglas Greene*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS GREENE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GRANITE CONSTRUCTION INCORPORATED, JAMES H. ROBERTS, and JIGISHA DESAI,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

CLASS ACTION COMPLAINT

Plaintiff Douglas Greene ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Granite Construction Incorporated ("Granite" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Granite; and (c) review of other publicly available information concerning Granite.

### NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Granite securities between October 26, 2018 and August 1, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Granite purports to be one of the largest diversified infrastructure companies in the United States. In the public sector, the Company primarily focuses on heavy-civil infrastructure projects such as roads, highways, and power-related facilities. In the private sector, the Company provides site preparation and infrastructure services for residential development, energy development, and other facilities.

3.      On July 29, 2019, after the market closed, the Company disclosed that second quarter 2019 financial results were negatively impacted by non-cash charges related to four legacy, unconsolidated heavy civil joint venture projects. As a result, Granite expected to report net loss per diluted share in the range of $2.05 to $2.10 per diluted share.

4.      On this news, the Company's stock price fell $7.98 per share, or nearly 18%, to close at $36.49 per share on July 30, 2019, on unusually heavy trading volume.

5.      On August 2, 2019, before the market opened, the Company announced its second quarter 2019 financial results, reporting revenue of $789.5 million, including $114.2 million in revenue reduction due to the charges disclosed earlier that week.

6.     On this news, the Company's stock price fell $2.78 per share, or over 8%, to close at $31.22 per share on August 2, 2019, on unusually heavy trading volume.

7.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had assumed certain risks in connection with its heavy civil joint venture projects bid between 2012 and 2014; (2) that there was an "untenable" imbalance of risk sharing between the Company and the joint venture project owners; (3) that, as a result, the Company was reasonably likely to incur additional project costs for its joint venture projects; (4) the Company was reasonably likely to incur additional costs in connection with certain project disputes; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects and prospects were materially misleading and/or lacked a reasonable basis.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

12.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13.    Plaintiff Douglas Greene, as set forth in the accompanying certification, incorporated by reference herein, purchased Granite securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.    Defendant Granite is incorporated under the laws of Delaware with its principal executive offices located in Watsonville, California. Granite's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "GVA."

15.    Defendant James H. Roberts ("Roberts") was the Chief Executive Officer of the Company at all relevant times.

16.    Defendant Jigisha Desai ("Desai") was the Chief Financial Officer of the Company at all relevant times.

17.    Defendants Roberts and Desai are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Granite's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for

the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Granite purports to be one of the largest diversified infrastructure companies in the United States. In the public sector, the Company primarily focuses on heavy-civil infrastructure projects such as roads, highways, and power-related facilities. In the private sector, the Company provides site preparation and infrastructure services for residential development, energy development, and other facilities

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period begins on October 26, 2018. On that day, the Company announced its third quarter 2018 financial results, reporting revenue of $1.06 billion and net income of $55.7 million.

20.     On October 29, 2018, the Company filed its quarterly report for the period ended September 30, 2018, affirming the previously announced financial results.

21.     On February 20, 2019, the Company announced its full year 2018 financial results, stating in a press release, reporting revenue of $3.32 billion, gross profit of $389.2 million, and net income of $42.4 million.

22.     On February 22, 2019, the Company filed its annual report on Form 10-K for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results. Regarding joint ventures, the 2018 10-K stated, in relevant part:

**Joint Ventures**

We participate in various construction joint ventures of which we are a limited member ("joint ventures") in order to share expertise, risk and resources for certain highly complex projects. Generally, each construction joint venture is formed as a partnership or limited liability company to accomplish a specific project and is jointly controlled by the joint venture partners. We select our joint venture partners ("partner(s)") based on our analysis of their construction and financial capabilities, expertise in the type of work to be performed and past working relationships, among other criteria. The joint venture agreements typically provide that our interests in any profits and assets, and our respective share in any losses and

liabilities, that may result from the performance of the contract are limited to our stated percentage interest in the project.

Under each joint venture agreement, one partner is designated as the sponsor. The sponsoring partner typically provides all administrative, accounting and most of the project management support for the project and generally receives a fee from the joint venture for these services. We have been designated as the sponsoring partner in certain of our current joint venture projects and are a non-sponsoring partner in others.

\* \* \*

The agreements with our partner(s) for both construction joint ventures and line item joint ventures define each partner's management role and financial responsibility in the project. The amount of operational exposure is generally limited to our stated ownership interest. However, due to the joint and several nature of the performance obligations under the related owner contracts, if any of the partners fail to perform, we and the remaining partners, if any, would be responsible for performance of the outstanding work (i.e., we provide a performance guarantee). We estimate our liability for performance guarantees for our unconsolidated and line item joint ventures and include them in accrued expenses and other current liabilities with a corresponding increase in equity in construction joint ventures in the consolidated balance sheets. We reassess our liability when and if changes in circumstances occur. The liability and corresponding asset are removed from the consolidated balance sheets upon completion and customer acceptance of the project. Circumstances that could lead to a loss under these agreements beyond our stated ownership interest include the failure of a partner to contribute additional funds to the venture in the event the project incurs a loss or additional costs that we could incur should a partner fail to provide the services and resources that it had committed to provide in the agreement. We are not able to estimate amounts that may be required beyond the remaining cost of the work to be performed. These costs could be offset by billings to the customer or by proceeds from our partners' corporate and/or other guarantees.

At December 31, 2018, there was $3.1 billion of construction revenue to be recognized on unconsolidated and line item construction joint venture contracts, of which $1.0 billion represented our share and the remaining $2.1 billion represented our partners' share.

23.     Under "Risk Factors," the 2018 10-K stated, in relevant part:

**Our joint venture contracts subject us to risks and uncertainties, some of which are outside of our control.** As further described in Note 1 of "Notes to the Consolidated Financial Statements" and under "Item 1. Business; Joint Ventures," we perform certain construction contracts as a limited member of joint ventures. Participating in these arrangements exposes us to risks and uncertainties, including the risk that if our partners fail to perform under joint and several liability contracts, we could be liable for completion of the entire contract. In addition, if our partners

are not able or willing to provide their share of capital investment to fund the operations of the venture, there could be unanticipated costs to complete the projects, financial penalties or liquidated damages. These situations could have a material adverse effect on our financial position, results of operations, cash flows and liquidity.

To the extent we are not the controlling partner, we have limited control over many of the decisions made with respect to the related construction projects. These joint ventures may not be subject to the same compliance requirements, including those related to internal control over financial reporting. While we have controls to sufficiently mitigate the risks associated with reliance on their control environment and financial information, to the extent the controlling partner makes decisions that negatively impact the joint venture or internal control problems arise within the joint venture, it could have a material adverse impact on our business, financial position, results of operations, cash flows and liquidity.

24.    Moreover, under "Legal Proceedings," which includes matters related to joint ventures, 2018 10-K stated that "[t]he aggregate liabilities recorded as of December 31, 2018 and 2017 related to these matters were immaterial."

25.    On April 26, 2019, the Company announced its first quarter 2019 financial results, reporting revenue of $619.8 million and gross profit of $40.5 million. The press release also provided the Company's outlook for 2019, stating in relevant part:

**Outlook and Guidance**

"2019 will be a strong year of growth and strategic execution for Granite, despite the extreme winter and spring weather that impacted our results in the first quarter," Roberts said. "Historically strong Committed and Awarded Projects and booking trends, along with healthy funding and demand, continue to fuel our confidence that we will deliver on our previously stated 2019 growth and earnings expectations."

The Company's expectations for 2019 (including 2018 acquisitions) remain at:

- Low-teens consolidated revenue growth, which is subject to late-year seasonality.

- Adjusted EBITDA margin of 8.5 percent to 9.5 percent.

26.    The same day, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2019, affirming the previously reported financial results. Under "Legal Proceedings," the Company stated that "aggregate liabilities recorded as of March 31, 2019, December 31, 2018 and March 31, 2018 related to these matters were immaterial."

27.     The above statements identified in ¶¶20-26 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company had assumed certain risks in connection with its heavy civil joint venture projects bid between 2012 and 2014; (2) that there was an "untenable" imbalance of risk sharing between the Company and the joint venture project owners; (3) that, as a result, the Company was reasonably likely to incur additional project costs for its joint venture projects; (4) the Company was reasonably likely to incur additional costs in connection with certain project disputes; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

28.     On July 29, 2019, after the market closed, the Company disclosed that second quarter 2019 financial results were negatively impacted by non-cash charges related to four legacy, unconsolidated heavy civil joint venture projects. In a press release, the Company stated, in relevant part:

> As a result of independent second quarter 2019 events related to four legacy, unconsolidated heavy civil joint venture projects, Granite's financial results in the second quarter of 2019 are expected to include after-tax charges of between $104 million to $108 million (or $2.20 per diluted share to $2.30 per diluted share). The charges on these four projects bid between 2012 and 2014 are related to 1) increased project completion costs, which were exacerbated by schedule delays and execution of a significant amount of disputed work, and 2) a recent unfavorable court ruling on a project dispute.

29.     On this news, the Company's stock price fell $7.98 per share, or nearly 18%, to close at $36.49 per share on July 30, 2019, on unusually heavy trading volume.

30.     On August 2, 2019, before the market opened, the Company announced its second quarter 2019 financial results, reporting revenue of $789.5 million, including $114.2 million in revenue reduction due to the charges disclosed earlier that week. In a conference call held the same day to discuss the results, Defendant Roberts stated, in relevant part:

---

CLASS ACTION COMPLAINT

Through our quarterly project reviews and estimates of complete update, our teams reported in late June that they had experienced increased project completion cost in the second quarter of 2019. These costs which were exacerbated by scheduled delays and by the execution of disputed work resulted in the charges reported today and in Monday's announcement. The charges relate to the four legacy projects bid between 2012 and 2014 that we have been discussing for several years.

Additionally in early July, we received notice of an unfavorable court ruling on one of the related outstanding project disputes. As a result of these charges, which included a revenue reduction of more than a $114 million in the second quarter, we have revised our full-year expectations for 2019

* * *

Instead of entering into what we believe to be a partnering relationship, it is now clear that especially in the context of these megaprojects, *the best price design-build contract delivery model and the public-private partnership contract delivery model resulted in an untenable imbalance of risk sharing between Granite and the project owners.*

31.     On this news, the Company's stock price fell $2.78 per share, or over 8%, to close at $31.22 per share on August 2, 2019, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Granite securities between October 26, 2018 and August 1, 2019, inclusive (collectively, the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Granite's securities were actively traded on the NYSE exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Granite shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Granite or its transfer agent and may be notified of

1   the pendency of this action by mail, using the form of notice similar to that customarily used in

2   securities class actions.

3         34.    Plaintiff's claims are typical of the claims of the members of the Class as all

4   members of the Class are similarly affected by Defendants' wrongful conduct in violation of

5   federal law that is complained of herein.

6         35.    Plaintiff will fairly and adequately protect the interests of the members of the Class

7   and has retained counsel competent and experienced in class and securities litigation.

8         36.    Common questions of law and fact exist as to all members of the Class and

9   predominate over any questions solely affecting individual members of the Class.  Among the

10  questions of law and fact common to the Class are:

11              (a)    whether the federal securities laws were violated by Defendants' acts as

12  alleged herein;

13              (b)    whether statements made by Defendants to the investing public during the

14  Class Period omitted and/or misrepresented material facts about the business, operations, and

15  prospects of Granite; and

16              (c)    to what extent the members of the Class have sustained damages and the

17  proper measure of damages

18        37.    A class action is superior to all other available methods for the fair and efficient

19  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

20  damages suffered by individual Class members may be relatively small, the expense and burden of

21  individual litigation makes it impossible for members of the Class to individually redress the

22  wrongs done to them.  There will be no difficulty in the management of this action as a class

23  action.

24                          **UNDISCLOSED ADVERSE FACTS**

25        38.    The market for Granite's securities was open, well-developed and efficient at all

26  relevant times.  As a result of these materially false and/or misleading statements, and/or failures

27  to disclose, Granite's securities traded at artificially inflated prices during the Class Period.

28  Plaintiff and other members of the Class purchased or otherwise acquired Granite's securities

1    relying upon the integrity of the market price of the Company's securities and market information

2    relating to Granite, and have been damaged thereby.

3         39.     During the Class Period, Defendants materially misled the investing public, thereby

4    inflating the price of Granite's securities, by publicly issuing false and/or misleading statements

5    and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth

6    herein, not false and/or misleading.  Said statements and omissions were materially false and/or

7    misleading in that they failed to disclose material adverse information and/or misrepresented the

8    truth about Granite's business, operations, and prospects as alleged herein.

9         40.     At all relevant times, the material misrepresentations and omissions particularized

10    in this Complaint directly or proximately caused or were a substantial contributing cause of the

11    damages sustained by Plaintiff and other members of the Class.  As described herein, during the

12    Class Period, Defendants made or caused to be made a series of materially false and/or misleading

13    statements about Granite's financial well-being and prospects.  These material misstatements

14    and/or omissions had the cause and effect of creating in the market an unrealistically positive

15    assessment of the Company and its financial well-being and prospects, thus causing the

16    Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants'

17    materially false and/or misleading statements during the Class Period resulted in Plaintiff and

18    other members of the Class purchasing the Company's securities at artificially inflated prices, thus

19    causing the damages complained of herein.

20                                     **LOSS CAUSATION**

21         41.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused

22    the economic loss suffered by Plaintiff and the Class.

23         42.     During the Class Period, Plaintiff and the Class purchased Granite's securities at

24    artificially inflated prices and were damaged thereby.  The price of the Company's securities

25    significantly declined when the misrepresentations made to the market, and/or the information

26    alleged herein to have been concealed from the market, and/or the effects thereof, were revealed,

27    causing investors' losses.

28

---

## SCIENTER ALLEGATIONS

43.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Granite, his/her control over, and/or receipt and/or modification of Granite's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Granite, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

44.     The market for Granite's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Granite's securities traded at artificially inflated prices during the Class Period.  On November 7, 2018, the Company's share price closed at a Class Period high of $55.69 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Granite's securities and market information relating to Granite, and have been damaged thereby.

45.     During the Class Period, the artificial inflation of Granite's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Granite's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Granite and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company

1  stock.  Defendants' materially false and/or misleading statements during the Class Period resulted
2  in Plaintiff and other members of the Class purchasing the Company's securities at such
3  artificially inflated prices, and each of them has been damaged as a result.

4        46.    At all relevant times, the market for Granite's securities was an efficient market for
5  the following reasons, among others:

6        (a)    Granite stock met the requirements for listing, and was listed and actively
7  traded on the NYSE, a highly efficient and automated market;

8        (b)    As a regulated issuer, Granite filed periodic public reports with the SEC
9  and/or the NYSE;

10       (c)    Granite regularly communicated with public investors *via* established
11  market communication mechanisms, including through regular dissemination of press releases on
12  the national circuits of major newswire services and through other wide-ranging public
13  disclosures, such as communications with the financial press and other similar reporting services;
14  and/or

15       (d)    Granite was followed by securities analysts employed by brokerage firms
16  who wrote reports about the Company, and these reports were distributed to the sales force and
17  certain customers of their respective brokerage firms.  Each of these reports was publicly available
18  and entered the public marketplace

19       47.    As a result of the foregoing, the market for Granite's securities promptly digested
20  current information regarding Granite from all publicly available sources and reflected such
21  information in Granite's stock price.  Under these circumstances, all purchasers of Granite's
22  securities during the Class Period suffered similar injury through their purchase of Granite's
23  securities at artificially inflated prices and a presumption of reliance applies.

24       48.    A Class-wide presumption of reliance is also appropriate in this action under the
25  Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),
26  because the Class's claims are, in large part, grounded on Defendants' material misstatements
27  and/or omissions.  Because this action involves Defendants' failure to disclose material adverse
28  information regarding the Company's business operations and financial prospects—information

---

CLASS ACTION COMPLAINT
12

that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Granite who knew that the statement was false when made.

## FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

50. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51. During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Granite's securities at

artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

52.    The Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Granite's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Granite's financial well-being and prospects, as specified herein.

54.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Granite's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Granite  and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

55.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and

1  participated in the creation, development and reporting of the Company's internal budgets, plans,

2  projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

3  familiarity with the other defendants and was advised of, and had access to, other members of the

4  Company's management team, internal reports and other data and information about the

5  Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

6  was aware of the Company's dissemination of information to the investing public which they

7  knew and/or recklessly disregarded was materially false and misleading.

8      56.    The Company and the Individual Defendants had actual knowledge of the

9  misrepresentations and/or omissions of material facts set forth herein, or acted with reckless

10 disregard for the truth in that they failed to ascertain and to disclose such facts, even though such

11 facts were available to them. Such defendants' material misrepresentations and/or omissions were

12 done knowingly or recklessly and for the purpose and effect of concealing Granite's financial

13 well-being and prospects from the investing public and supporting the artificially inflated price of

14 its securities.  As demonstrated by the Company and the Individual Defendants' overstatements

15 and/or misstatements of the Company's business, operations, financial well-being, and prospects

16 throughout the Class Period, these defendants, if they did not have actual knowledge of the

17 misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by

18 deliberately refraining from taking those steps necessary to discover whether those statements

19 were false or misleading.

20     57.    As a result of the dissemination of the materially false and/or misleading

21 information and/or failure to disclose material facts, as set forth above, the market price of

22 Granite's securities was artificially inflated during the Class Period.  In ignorance of the fact that

23 market prices of the Company's securities were artificially inflated, and relying directly or

24 indirectly on the false and misleading statements made by the Company and the Individual

25 Defendants, or upon the integrity of the market in which the securities trades, and/or in the

26 absence of material adverse information that was known to or recklessly disregarded by the

27 Company and the Individual Defendants, but not disclosed in public statements by these

28

defendants during the Class Period, Plaintiff and the other members of the Class acquired Granite's securities during the Class Period at artificially high prices and were damaged thereby.

58.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Granite was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Granite  securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.    By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

61.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.    The Individual Defendants acted as controlling persons of Granite within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public

1    filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these

2    statements were issued and had the ability to prevent the issuance of the statements or cause the

3    statements to be corrected.

4        63.    In particular, each of these Defendants had direct and supervisory involvement in

5    the day-to-day operations of the Company and, therefore, is presumed to have had the power to

6    control or influence the particular transactions giving rise to the securities violations as alleged

7    herein, and exercised the same.

8        64.    As set forth above, Granite and the Individual Defendants each violated Section

9    10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of

10   their positions as controlling persons, the Individual Defendants are liable pursuant to Section

11   20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct,

12   Plaintiff and other members of the Class suffered damages in connection with their purchases of

13   the Company's securities during the Class Period.

14       **PRAYER FOR RELIEF**

15       WHEREFORE, Plaintiff prays for relief and judgment, as follows:

16       (a)    Determining that this action is a proper class action under Rule 23 of the Federal

17   Rules of Civil Procedure;

18       (b)    Awarding compensatory damages in favor of Plaintiff and the other Class members

19   against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

20   wrongdoing, in an amount to be proven at trial, including interest thereon;

21       (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

22   this action, including counsel fees and expert fees; and

23       (d)    Such other and further relief as the Court may deem just and proper.

24       **JURY TRIAL DEMANDED**

25       Plaintiff hereby demands a trial by jury.

26

27

28

DATED:  August 13, 2019                      **GLANCY PRONGAY & MURRAY LLP**

By:   */s/ Lesley F. Portnoy*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiff Douglas Greene*

**SWORN CERTIFICATION OF PLAINTIFF**

**GRANITE CONSTRUCTION INCORPORATED SECURITIES LITIGATION**

I, Douglas Greene, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.      I am duly authorized to institute legal action against Granite Construction Incorporated and other defendants.

3.      I did not purchase Granite Construction Incorporated securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

4.      I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

5.      My transactions in Granite Construction Incorporated securities during the Class Period set forth in the Complaint are as follows:

          (See attached transactions)

6.      I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

7.      I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/8/2019
_____
Date

DocuSigned by:
*Douglas Greene*
E5D9888D359849A...
_____
Douglas Greene

**Douglas Greene's Transactions in Granite Construction Incorporated (GVA)**

| Date | Transaction Type | Quantity | Unit Price |
|------|-----------------|----------|-----------|
| 1/7/2019 | Bought | 500 | $41.4900 |