IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS GREENE, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

GRANITE CONSTRUCTION INCORPORATION, JAMES H. ROBERTS, and JIGISHA DESAI,

    Defendants.

No. C 19-04744 WHA

**ORDER APPOINTING LEAD PLAINTIFF**

**INTRODUCTION**

Pursuant to the Private Securities Litigation Reform Act, this order appoints The Police Retirement System of St. Louis as lead plaintiff. This order accordingly **DENIES** the motions of other parties for appointment as lead plaintiff.

**STATEMENT**

In August 13, 2019, individual investor Douglass Greene filed this putative securities class action against defendant Granite Construction Incorporation and individual defendants James H. Roberts, the CEO of Granite, and Jigisha Desia, the CFO of Granite, alleging false and misleading statements in violation of federal securities laws. That same day, Greene's counsel published a notice on *Business Wire* informing investors that a class action lawsuit had been filed against Granite and that investors had 60 days from the publication of the notice to seek appointment as lead plaintiff (Dkt. Nos. 1, 9).

Plaintiff alleges that Granite misrepresented and concealed information regarding certain risks and additional costs related to its joint venture construction projects. Plaintiff further alleges that Granite made positive statements about these projects. However, in July 2019, Granite disclosed that its financial results for the second quarter of fiscal year 2019 were negatively impacted by non-cash charges related to four legacy, unconsolidated heavy civil joint venture projects. The disclosure ultimately led the stock price to fall $7.98 per share. The stock price then fell $2.78 per share in August 2019 following a further announcement that the four projects had experienced delays and increased costs (Compl. ¶¶ 7, 28–31).

Four lead plaintiff candidates timely filed motions for appointment: (1) The Police Retirement System of St. Louis, (2) Doug Mittelman, (3) Ahmad Rategh, (4) Anchorage Police & Fire Retirement System. Doug Mittelman and Ahmad Rategh have filed statements of non-opposition. Anchorage Police & Fire Retirement system has filed a response to The Police Retirement of St. Louis's motion, but the response does not oppose St. Louis's appointment.

The undersigned judge requested that each lead plaintiff candidate file responses to a questionnaire about its qualifications, experience in managing litigation, transactions in the shares at issue, and any potential conflicts related to the instant securities litigation. St. Louis and Anchorage have submitted answers to the lead plaintiff questionnaire. A hearing on the appointment of lead plaintiff was held and St. Louis was questioned on its qualifications. Anchorage was also in attendance.

**ANALYSIS**

**1. APPOINTMENT OF LEAD PLAINTIFF.**

Under the PSLRA, the district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has filed the complaint or brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and

2

(3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)–(cc). The above presumption may be rebutted only upon proof that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)–(bb).

The PSLRA establishes a three-step inquiry for appointing a lead plaintiff. *First*, a plaintiff files the action and posts notice, allowing other lead plaintiff candidates to file motions. *Second*, the district court considers which of those plaintiffs has the largest financial interest in the action and whether that plaintiff meets the requirements of FRCP 23. *Third*, other candidates have the opportunity to rebut the presumption that the putative lead plaintiff can adequately represent the class and to compete themselves for the job. *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002).

### A. Largest Financial Interest.

The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest." *See* 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)(bb). Our court of appeals also has not prescribed a particular method for calculating a plaintiff's financial interest but has directed that "the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4.

Here, the movants calculate financial interest based on the losses suffered. Under this test, courts consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012). The fourth factor, the net "approximate loss," is generally considered the most important factor. *Ibid.* Absent proof that the lead plaintiff candidate with the largest financial interest does not satisfy the requirements of FRCP 23, said candidate is "entitled to lead plaintiff status." *In re Cavanaugh*, 306 F.3d at 732.

3

St. Louis purchased 8,525 shares during the class period and suffered an estimated net loss of $108,119.74. Anchorage, who filed a "response" but not an opposition to St. Louis's motion for appointment as lead plaintiff, purchased 1,936 shares and suffered a $26,193.31 loss during the class period. Anchorage does not dispute that St. Louis has the largest financial interest. All other candidates do not oppose St. Louis's motion. Because St. Louis has shown that it has the largest financial interest within the meaning of the statute, it is presumptively the most adequate lead plaintiff.

### B. Requirements of Typicality and Adequacy Under FRCP 23.

Once a court determines which plaintiff has the largest financial interest, "the court must appoint that plaintiff as lead, unless it finds that [plaintiff] does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d at 732. The district court must inquire whether the putative lead plaintiff satisfies the requirements of FRCP 23(a). *Id*. at 730. The inquiry focuses on the "typicality" and "adequacy" requirements, as the other requirements in FRCP 23 of numerosity and commonality would preclude class certification by themselves. *Id*. at 730 n.5.

The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members as a result of the same conduct by the defendants. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In the instant action, the alleged risks and additional costs related to the joint venture constructions projects coupled with Granite's alleged misrepresentations and subsequent disclosures caused St. Louis and absent class members alike to suffer financial loss. As a result St. Louis's are based on the same legal theories as the other class members.

The adequacy requirement of FRCP 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In response to the lead plaintiff questionnaire, St. Louis has identified Mark Lawson, St. Louis's Executive Director, as being the individual in charge of

4

managing its litigation responsibilities. Mr. Lawson was previously Secretary and General Counsel to the St. Louis Board of Police Commissioners. St. Louis has been or is currently lead plaintiff in six other class actions, and has also asserted there are no travel impediments nor conflicts in carrying out its responsibilities as lead plaintiff in this action. This order concludes St. Louis has made an adequate showing of typicality and adequacy, subject to a final determination of these requirements at the time of a FRCP 23 motion. Because this order does not appoint lead counsel at this time, the adequacy of counsel ultimately selected will be determined at a later date.

### C. Attempts to Rebut Presumption.

Other plaintiffs may rebut the presumption that the putative lead plaintiff has satisfied the requirements of typicality and adequacy. *In re Cavanaugh*, 306 F.3d at 730. Anchorage does not oppose the appointment of St. Louis as lead plaintiff but nevertheless argues that St. Louis "did not submit a response to the questionnaire, nor does it appear to have selected counsel through a competitive process consistent with this Court's requirements in prior cases," while Anchorage is the "only Lead Plaintiff movant to recognize the Court's rigorous requirements and fully acknowledge the role of Lead Plaintiff and everything this important role entails" by submitting a questionnaire and deferring its motion to appoint lead plaintiff.

St. Louis has the largest financial interest in the relief sought by the classes and otherwise satisfies the typicality and adequacy requirements of FRCP 23. Although the points that Anchorage raises are true, St. Louis has now filed a response to the questionnaire, including an updated list of pending securities class actions it is lead plaintiff in. It has further acknowledged that lead counsel appointment will be deferred until after appointment of lead plaintiff, and is "prepared to undertake any additional due diligence or vetting of counsel as the Court deems appropriate." This order thus finds that the concerns raised by Anchorage do not rebut the presumption that the putative lead plaintiff has satisfied the requirements of typicality and adequacy. Any concerns regarding St. Louis's choice in counsel will be addressed in selecting lead counsel, as discussed below. St. Louis is therefore the most adequate lead plaintiff.

**INSTRUCTIONS TO THE POLICE RETIREMENT SYSTEM OF ST. LOUIS**

The Police Retirement System of St. Louis is appointed lead plaintiff. The following sets forth the procedure for selecting and approving class counsel. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. 78u- 4(a)(3)(B)(v). Selection and approval require an assessment of the strengths, weaknesses, and experience of counsel as well as the financial burden — in terms of fees and costs — on the class. *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D. Cal. February 4, 2000) (Judge Vaughn R. Walker).

Any important decision made by a fiduciary should be preceded by due diligence. A lead plaintiff is a fiduciary for the investor class. No decision by the lead plaintiff is more important than the selection of class counsel. Consequently, the lead plaintiff should precede its choice with due diligence. The extent of such due diligence is a matter of judgment and reasonableness based on the facts and circumstances. The lead plaintiff may consider its current counsel along with all other candidates but it may not give current counsel any special preference. Considerations should include each candidate's fee proposal, its track record, the particular lawyers to be assigned to the case, the candidate's ability and willingness to finance the case, the candidate's proposals for the prosecution of the case, and the factors set forth in the questionnaire. The lead plaintiff should immediately proceed to perform, if it hasn't done so already, its due diligence in the selection of class counsel, and to interview appropriate candidates.

Counsel wishing to apply to be considered for the role of lead counsel should promptly contact Mark Lawson at:

> The Police Retirement System of St. Louis
> 2020 Market St.
> St. Louis, MO 63103

The Police Retirement System of St. Louis shall, if it hasn't done so already, promptly advertise for applicants and leave open the application period for class counsel until **DECEMBER 12, 2019**, and shall make a final decision as to the selection of counsel by **DECEMBER 26, 2019**. Through counsel, The Police Retirement System of St. Louis shall move for the appointment

6

and approval of their selected counsel no later than **JANUARY 9, 2020**. The motion should be accompanied by a declaration from the lead plaintiff explaining the due diligence undertaken with respect to the selection of class counsel. The declaration should also explain why the counsel selected was favored over other potential candidates. The declaration should further certify no pay-to-play arrangement was made. The declaration should be filed under seal and not served on defendants. The motion for approval of lead plaintiff's choice of counsel, however, should be served on defense counsel. No hearing will be held on the motion unless the Court determines that it would be beneficial.

**IT IS SO ORDERED.**

Dated: November 26, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE