**BLEICHMAR FONTI & AULD LLP**
Peter E. Borkon (Bar No. 212596)
pborkon@bfalaw.com
Lesley E. Weaver (Bar No. 191305)
lweaver@bfalaw.com
555 12th Street, Suite 1600
Oakland, California 94607
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

    -and-

Javier Bleichmar (*pro hac vice*)
jbleichmar@bfalaw.com
Ross Shikowitz (*pro hac vice*)
rshikowitz@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile: (212) 205-3960

*Counsel for Lead Plaintiff*
*the Police Retirement System of St. Louis*
*and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS GREENE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GRANITE CONSTRUCTION INCORPORATED, JAMES H. ROBERTS, and JIGISHA DESAI,<br><br>Defendants. | Case No. 3:19-cv-04744-WHA<br><br>CLASS ACTION<br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

**NOTICE OF MOTION AND MOTION**

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that pursuant to the Court's November 26, 2019 Order ("November 26 Order"), *Greene v. Granite Construction Inc.*, 2019 WL 6327229 (N.D. Cal.) (Alsup, J.), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(v), Lead Plaintiff the Police Retirement System of St. Louis ("St. Louis" or the "System") respectfully moves the Court to approve its selection of Bleichmar Fonti & Auld LLP ("BFA") to serve as Lead Counsel for the proposed Class.[1]

This Motion is made on the grounds that St. Louis has determined that BFA is best suited to represent the interests of the Class. St. Louis' determination is the product of an extensive due diligence process, including the public issuance of a request for proposals ("RFP"), the review and analysis of competing submissions from many well-credentialed law firms, and in-person interviews of the top candidates that responded to the RFP. This due diligence process strictly adhered to the Court's instructions to St. Louis in the November 26 Order. Indeed, as a result of its due diligence process and comparison of each of the applicants, St. Louis selected BFA to represent the Class, a different law firm than the one it initially retained to seek Lead Plaintiff appointment in this case. *See* ECF No. 18. As such, St. Louis requests that the Court approve its selection of BFA to serve as Lead Counsel for the Class.

This Motion is based upon the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of St. Louis' Executive Director, Mark E. Lawson ("Lawson Decl."), filed under seal herewith as required by the November 26 Order (*see Greene*, 2019 WL 6327229 at *4), the Declaration of Peter E. Borkon ("Borkon Decl."), the pleadings and other filings herein, and any such other written or oral argument as may be permitted by the Court.

---

[1] The November 26 Order states that "[n]o hearing will be held on the motion unless the Court determines that it would be beneficial." *Greene*, 2019 WL 6327229 at *4. As such, this motion does not set a hearing date. Should the Court wish to schedule a hearing on the motion, we note that the first available date under Local Rule 7-2(a) is February 13, 2020.

Should the Court grant this Motion, St. Louis proposes to confer with Defendants and jointly submit to the Court within 14 days after entry of the order approving St. Louis' selection of counsel a proposed schedule regarding the date by which St. Louis will file an amended complaint and a briefing schedule on Defendants' anticipated motion to dismiss. This proposal is consistent with the Court-ordered Stipulation Regarding Response to Initial Securities Complaint. *See* ECF No. 15 at 2 (providing 14 days to submit proposed scheduling order from the date "the Court appoints a Lead Plaintiff" pursuant to the PSLRA, without contemplating this Court's procedure for the selection and approval of Lead Counsel). The System has conferred with Defendants, who agree to this proposal.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF THE ISSUE TO BE DECIDED

1.    Whether the Court should approve St. Louis' selection of BFA as Lead Counsel for the proposed Class pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v).

### II.    PRELIMINARY STATEMENT

On November 26, 2019, the Court appointed St. Louis as Lead Plaintiff and ordered St. Louis to conduct a due diligence process to select and retain proposed Lead Counsel. *Greene*, 2019 WL 6327229, at *3-4. At that time, St. Louis was represented by the law firm of Robbins LLP. *See* Borkon Decl. Ex. A at 3:8-10. As part of the due diligence, the Court ordered St. Louis to "assess[] the strengths, weaknesses, and experience of counsel as well as the financial burden—in terms of fees and costs—on the class." *Greene*, 2019 WL 6327229, at *3. The Court further ordered that St. Louis "should immediately proceed to perform . . . its due diligence in the selection of class counsel, and to interview appropriate candidates." *Id.*

As the Court ordered, St. Louis immediately commenced its due diligence process consistent with the November 26 Order. *See* Lawson Decl. ¶¶ 5-12. On November 27, 2019, St. Louis issued a public RFP and sent direct emails to several law firms apprising the firms of the RFP. *See id.* ¶ 6. After receiving the proposals, St. Louis thoroughly analyzed all of them in a process personally overseen by St. Louis' Executive Director, an attorney with extensive experience selecting and supervising outside litigation counsel. *See id.* ¶¶ 2-3, 10. St. Louis then invited the top candidates to

1 | make in-person proposals before the Executive Director, a Board committee, as well as St. Louis' in-house legal advisor. *See id*. ¶¶ 10-11. As a result of this process, St. Louis selected BFA as proposed Lead Counsel to represent the Class in this case. *See id*. ¶¶ 12-17.

The System's process was thorough, impartial, and always geared toward discerning which law firm would best represent the Class' interests in this case. *See id*. ¶¶ 5-12, 16-17. St. Louis selected BFA because of its and its attorneys' histories of successfully prosecuting securities class actions, the firm's highly competitive fee proposal, the work that BFA has already conducted in investigating and analyzing the claims at issue, the quality of BFA's communication protocols, and BFA's proposed litigation strategy. *See id*. ¶¶ 13-15. St. Louis did not give any law firm special preference, as evidenced by its selection of a new law firm as a result of the due diligence process, nor was there any "pay-to-play" arrangement with BFA. *Greene*, 2019 WL 6327229, at *3-4; *See also* Lawson Decl. ¶ 17. Indeed, St. Louis has no prior relationship with BFA, and BFA's partnership agreement forbids the making of political contributions or any other sort of "pay-to-play" arrangement. *See* Lawson Decl. ¶¶ 9, 17; *see also* Borkon Decl. Ex. A at 11:10-14. Based on the results of its due diligence, St. Louis is confident that BFA will provide the Class with excellent legal representation at a highly competitive rate, thus maximizing the potential recovery for the Class. *See* Lawson Decl. ¶ 15.

The Ninth Circuit Court of Appeals and this Court have afforded significant deference to the Lead Plaintiff when selecting counsel in securities class actions. Indeed, "if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *In re Diamond Foods, Inc. Sec. Litig.*, 2012 WL 2146315, at *1 (N.D. Cal. June 13, 2012) (Alsup, J.) quoting *In re Cohen*, 586 F.3d 703, 712 (9th Cir. 2009); *see also Cohen*, 586 F.3d at 711 ("the district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently"); *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("[s]electing a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs").

Here, St. Louis' selection of BFA is more than reasonable, it is the result of an in-depth evaluation of the criteria the Court enunciated in its November 26 Order. *Greene*, 2019 WL 6327229,

at *3; *see also* Lawson Decl. ¶¶ 5-12.  It is also the product of a public and open RFP process overseen by professionals highly experienced in serving in a fiduciary capacity and overseeing outside counsel, and that resulted in the submission of numerous competitive proposals.  *See* Lawson Decl. ¶¶ 2-12.  After evaluation of the proposals and in-person interviews of the most promising candidates, St. Louis selected BFA as proposed Lead Counsel.  *See id.* ¶ 12.  As such, St. Louis respectfully requests that the Court grant this motion and appoint BFA as Lead Counsel for the Class.

### III.   ST. LOUIS FOLLOWED THE COURT-ORDERED DUE DILIGENCE PROCESS

#### A.   Summary of the November 26 Order

The November 26 Order instructed St. Louis to undertake a due diligence process for the selection and retention of counsel.  *See Greene*, 2019 WL 6327229, at *3-4.  That process "require[d] an assessment of the strengths, weaknesses, and experience of counsel as well as the financial burden—in terms of fees and costs—on the class."  *Greene*, 2019 WL 6327229, at *3.  More specifically, the November 26 Order stated that St. Louis should consider "each candidate's fee proposal, its track record, the particular lawyers to be assigned to the case, the candidate's ability and willingness to finance the case, the candidate's proposals for the prosecution of the case, and the factors set forth in the [Court's] questionnaire."  *Id.*  In addition, the November 26 Order stated that St. Louis "may consider its current counsel along with all other candidates but it may not give its current counsel any special preference."  *Id.*

As to scheduling, the November 26 Order instructed St. Louis to "immediately proceed to perform . . . its due diligence in the selection of class counsel and to interview appropriate candidates."  *Id.*  The Court ordered St. Louis to "promptly advertise for applicants and leave open the application period for class counsel until December 12, 2019."  *Id.* at *4.  The November 26 Order further ordered St. Louis to "make a final decision as to the selection of counsel by December 26, 2019," and that St. Louis "shall move for the appointment and approval of [its] selected counsel no later than January 9, 2020."  *Id.*

**B. Summary of St. Louis' Due Diligence Process**

St. Louis strictly adhered to the Court's requirements. On November 27, 2019, the day after being appointed Lead Plaintiff, St. Louis issued the RFP, which it placed on its website.[2] *See* Lawson Decl. ¶ 6; *see id.* Ex A. In addition, St. Louis emailed several law firms with which it had relationships to advise them of the issuance of the RFP and the opportunity to serve as Lead Counsel for the Class in this case. *See id.* ¶ 6. Consistent with the November 26 Order, the RFP left open the application period until 4:00pm Central Standard Time on December 12, 2019. *See id.* ¶ 7; *id.* Ex. A at 1-2.[3] In addition, the RFP informed candidates that St. Louis would interview candidates at its office in Missouri. *See id.* ¶ 7; *id.* Ex. A at 5.

St. Louis' RFP also evaluated the criteria set forth in the Court's November 26 Order and the Court's questionnaire. *See id.* ¶ 8; *id.* Ex. A at 3-5. This included, among other things: (1) the background of the specific attorneys to be assigned to this case and their experience in securities litigation; (2) the past record and performance of the firm and its attorneys in similar cases; (3) the firm's proposed fee and cost structure; (4) the applicant's proposed litigation strategy, including proposed amendments to the currently-filed complaint and how any anticipated issues of proof in the litigation would be addressed; (5) the efforts required of St. Louis and its Board and staff in support of the litigation and how the firm would work together with the System; (6) the firm's financial ability to prosecute this action; and (7) other relevant criteria as may be determined by St. Louis. *See id.*

As of the closing of the period for submission of responses to the RFP on December 12, 2019, St. Louis received several proposals, including from law firms with which it had no established relationship. *See id.* ¶ 9. All the proposals were reviewed by St Louis' Executive Director, with the intention of selecting the top respondents, and inviting them to make formal presentations and answer

---

[2] *See* https://www.stlouisprs.org/Resources/04efe27c-03a0-47e9-855b-29c17b53fb3b/PRS%20RFP%20Legal%20Services%20-%20Class%20Action%20Counsel.pdf (last visited Jan. 2, 2020).

[3] The RFP also allowed law firms to ask questions regarding the RFP until 4:00pm Central Standard Time on December 9, 2019. *See* Lawson Decl. ¶ 7; *id.* Ex. A at 1. St. Louis received no questions regarding the RFP. *See id.* ¶ 7.

questions. *See id.* ¶ 10. After reviewing the responses and considering the criteria set forth in the Court's November 26 Order, St. Louis invited four of the applicants to make in-person proposals to the System at its office on December 17, 2019. *See id.* ¶ 11. All four law firms accepted the invitation and presented to St. Louis' Executive Director, a quorum of the Legal Committee of St. Louis' Board of Trustees, as well as St. Louis' in-house legal advisor. *See id.* Each session afforded the applicants the opportunity to present their proposals, followed by a question-and-answer session. *See id.*

After St. Louis completed the interviews and due diligence process, St. Louis' Executive Director, the quorum of the System's Legal Committee, and St. Louis' in-house legal advisor discussed and considered the performance of each firm during the interview process together with their responses to the RFP under the criteria set forth in the RFP and the Court's November 26 Order. *See id.* ¶¶ 5-12. Based on that evaluation, St. Louis determined that BFA was best suited to represent the Class in this case. *See id.* ¶ 12. St. Louis' Board of Trustees unanimously approved the selection and retention of BFA. *See id.* ¶ 16.

## IV. APPROVAL OF ST. LOUIS' SELECTION OF COUNSEL IS APPROPRIATE

The PSLRA and the Ninth Circuit afford significant deference to the Lead Plaintiff when selecting and retaining Lead Counsel in securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Cohen*, 586 F.3d at 711 ("the district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently"); *Cavanaugh*, 306 F.3d at 732 ("the district court has no authority to select for the class what it considers to be the best possible lawyer or the lawyer offering the best possible fee schedule. Indeed, the district court does not select class counsel at all").

The Ninth Circuit has identified relevant factors for district courts to consider in evaluating the Lead Plaintiff's selection of counsel, including "the lead plaintiff's sophistication and experience, the process through which the lead plaintiff selected its candidates for and final choice of lead counsel, the qualifications and experience of selected counsel, and evidence of arms-length negotiations between lead plaintiff and proposed counsel." *Cohen*, 586 F.3d at 712 citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001).

When considering those factors here, approval of St. Louis' selection of BFA is appropriate. St. Louis is a sophisticated and highly experienced public pension plan responsible for overseeing more than $700 million in assets on behalf of over 2,000 active and retired police officers and their families. *See* Lawson Decl. ¶ 2. St. Louis is led by its Executive Director and a nine-member Board of Trustees, which has significant experience evaluating, selecting, retaining, and overseeing outside counsel in shareholder litigation. *See id*. ¶¶ 3-4. In addition to this action, St. Louis has served as Lead Plaintiff in two federal securities class actions and in three stockholder derivative actions, and achieved a $6 million resolution for investors in *In re Home Loan Servicing Solutions, Ltd. Securities Litigation*, 16-cv-606165 (S.D. Fla.). *See* ECF No. 54-1 at 10, 15.

The System's procedure for selecting BFA as proposed Lead Counsel hewed closely to the Court's November 26 Order and was a thorough, open, fair and competitive process that resulted in the submission of numerous proposals. *See* Lawson Decl. ¶¶ 5-12. As discussed more fully above, St. Louis issued a public RFP on its website and apprised law firms with which it had relationships of the RFP, provided prospective applicants with the opportunity to ask questions regarding the RFP, thoroughly analyzed each proposal and then invited the top applicants to present in-person to the System's Executive Director, a quorum of the Legal Committee of St. Louis' Board of Trustees, as well as St. Louis' in-house legal advisor. *See id*. As a result of this due diligence process, St. Louis determined that BFA would best represent the Class in this case. *See id.* ¶ 12.

What's more, BFA is a highly qualified law firm that is experienced in prosecuting securities class actions. The firm's partners have litigated dozens of securities class actions and successfully recovered over $11 billion for investors, including more than $600 million since BFA was formed in 2014. BFA's recent matters include a $234 million recovery in *In re MF Global Holdings Sec. Litig*., 1:11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Financial Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), the largest securities class action recovery ever achieved in the Eastern District of Virginia; and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 1:12-cv-02121-LAK (S.D.N.Y.). *See* ECF Nos. 30 at 78; 31-4.

The attorneys that BFA proposed to be assigned to this case similarly include highly experienced litigators, including those that led the teams in *MF Global* and *Genworth*, and have significant experience litigating securities class actions in the Northern District of California, and before this Court. *Id.* The attorneys also include BFA Partner Peter E. Borkon who successfully recovered over $200 million for investors in *In re Charles Schwab Corp. Sec. Litig.*, 3:08-cv-01510-WHA (N.D. Cal.) (Alsup, J.), the largest securities class action recovery ever achieved before this Court. *Id.* This experience, coupled with BFA's litigation strategy and communication protocols as set forth in its response to the RFP and in-person interview, gives St. Louis confidence that BFA will provide the Class with excellent representation. *See* Lawson Decl. ¶ 15.

Finally, St. Louis' negotiations with BFA, and all law firms involved in the due diligence process, were at arms-length. The System controlled the RFP process and did not give any special preference to BFA or any other law firm. *See id*. ¶¶ 5-12; 17. Indeed, St. Louis was initially represented in this case by Robbins LLP, then after issuing the RFP and analyzing all the relevant factors determined that BFA was the best choice to represent the Class. *See id*. ¶ 12. St. Louis has no prior relationship with BFA and certifies that there was no "pay-to-play" arrangement here. *See id*. ¶¶ 9, 12. That St. Louis selected BFA over its then-current law firm demonstrates that this was a fair and impartial process that the System conducted at arms-length. As critical, St. Louis negotiated a highly competitive fee with BFA, which is one of the primary reasons that St. Louis selected BFA over competitor firms. *See id*. ¶ 13. Given the extent of St. Louis' due diligence, the fee agreement the System secured with BFA, as well as BFA's qualifications, there is no question that St. Louis' selection of BFA is "reasonable," which is all that the Ninth Circuit requires. *Cohen*, 586 F.3d at 712.

For the foregoing reasons, St. Louis respectfully requests that the Court approve its selection of BFA to serve as Lead Counsel for the Class and grant any such other or further relief as the Court may deem just and proper.

| | |
|---|---|
| DATED: January 9, 2020 | Respectfully Submitted, |
| | **BLEICHMAR FONTI & AULD LLP** |
| |   /s/ *Peter E. Borkon*                                             |
| | Peter E. Borkon (Bar No. 212596) |
| | pborkon@bfalaw.com |
| | Lesley E. Weaver (Bar No. 191305) |
| | lweaver@bfalaw.com |
| | 555 12th Street, Suite 1600 |
| | Oakland, California 94607 |
| | Telephone: (415) 445-4003 |
| | Facsimile: (415) 445-4020 |
| |                -and- |
| | Javier Bleichmar (*pro hac vice*) |
| | jbleichmar@bfalaw.com |
| | Ross Shikowitz (*pro hac vice*) |
| | rshikowitz@bfalaw.com |
| | 7 Times Square, 27th Floor |
| | New York, NY 10036 |
| | Telephone: (212) 789-1340 |
| | Facsimile: (212) 205-3960 |
| | *Counsel for Lead Plaintiff the Police Retirement System of St. Louis and Proposed Lead Counsel for the Class* |