1   ROBBINS GELLER RUDMAN
&  DOWD LLP
2   X. JAY ALVAREZ (134781)
DEBRA J. WYMAN (190812)
3   JASON A. FORGE (181542)
BRIAN E. COCHRAN (286202)
4   655 West Broadway, Suite 1900
San Diego, CA  92101-8498
5   Telephone:  619/231-1058
619/231-7423 (fax)
6   jaya@rgrdlaw.com
dwyman@rgrdlaw.com
7   jforge@rgrdlaw.com
bcochran@rgrdlaw.com
8        – and –
SAMUEL H. RUDMAN
9   58 South Service Road, Suite 200
Melville, NY  11747
10  Telephone:  631/367-7100
631/367-1173 (fax)
11  srudman@rgrdlaw.com

12  Attorneys for Securities Act Plaintiff

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15  THE POLICE RETIREMENT SYSTEM OF      )  Case No. 3:19-cv-04744-WHA
ST. LOUIS, Individually and on Behalf of All  )
16  Others Similarly Situated,                )  NOTICE OF MOTION AND MOTION FOR
                                          )  AN AWARD OF ATTORNEY'S FEES AND
17                          Plaintiff,       )  EXPENSES AND AN AWARD TO
                                          )  SECURITIES ACT PLAINTIFF AND
18       vs.                              )  MEMORANDUM OF POINTS AND
                                          )  AUTHORITIES IN SUPPORT THEREOF
19  GRANITE CONSTRUCTION              )
INCORPORATED, et al.                   )  DATE:      February 24, 2022
20                                        )  TIME:      8:00 am
                          Defendants.     )  CTRM:     12, 19th Floor
21  _____ )  JUDGE:    Hon. William Alsup

22

23

24

25

26

27

28

4856-6570-7526.v5

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

      A.    Background ........................................................................................... 3

      B.    Motion to Intervene .............................................................................. 6

      C.    Mediation Before Magistrate Judge Joseph C. Spero ......................... 6

      D.    Response to the Court's Request for Further Briefing .......................... 7

      E.    The Court's Request for a Special Master ............................................ 7

      F.    Additional State Court Litigation Efforts ............................................ 9

II.   THE 12% FEE AWARD OF THE 37.5 MILLION RECOVERED FOR THE
      SECURITIES ACT CLAIMANTS IS WELL BELOW THE NINTH CIRCUIT
      BENCHMARK OF 25% AND CERTAINLY WITHIN THE MARKET RATE
      IN SIMILAR COMPLEX, CONTINGENT LITIGATION ............................. 10

      A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases .......... 10

      B.    A Percentage Fee of 3.48% of the Total Settlement and 12% of the $37.5
            Million Recovered for the Securities Act Claimants Is Reasonable ...... 11

            1.    The Results Achieved .............................................................. 12

            2.    The Risks of the Litigation and the Novelty and Difficulty of the
                  Questions Presented ................................................................ 12

            3.    The Skill Required and the Quality and Efficiency of the Work .............. 13

            4.    The Contingent Nature of the Fee and the Financial Burden
                  Carried by Securities Act Counsel .......................................... 14

            5.    The 12% Fee Award Is Well Within the Market Rate in Similar
                  Complex, Contingent Litigation .............................................. 15

      C.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis ........ 17

III.  THE EXPENSES ARE REASONABLE AND WERE NECESSARILY
      INCURRED TO ACHIEVE THE BENEFIT OBTAINED ............................... 18

IV.   SECURITIES ACT PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT
      TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE ............................................. 19

V.    CONCLUSION ................................................................................................ 21

1

## TABLE OF AUTHORITIES

2

Page

3

4

## CASES

5

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).................................................................................8

6

7

*Baker v. SeaWorld Ent., Inc.*,
   No. 14-CV-02129-MMA-AGS, 2020 WL 4260712
   (S.D. Cal. July 24, 2020) .......................................................................20

8

9

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd*, 899 F.2d 21 (11th Cir. 1990)........................................................12

10

11

*Blum v. Stenson*,
   465 U.S. 886 (1984)..........................................................................10, 15

12

13

*Booth v. Strategic Realty Tr., Inc.*,
   No. 13-cv-04921-JST, 2015 WL 6002919
   (N.D. Cal. Oct. 15, 2015).......................................................................10

14

15

*Buccellato v. AT&T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 3348055
   (N.D. Cal. June 30, 2011) ......................................................................18

16

17

*Buccellato v. AT&T Operations, Inc.*,
   No. C10-00463-LHK, 2011 WL 4526673
   (N.D. Cal. June 30, 2011) ......................................................................20

18

19

*Cent. R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)...............................................................................10

20

21

*de Mira v. Heartland Emp. Serv., LLC*,
   No. 12-CV-04092 LHK, 2014 WL 1026282
   (N.D. Cal. Mar. 13, 2014) ......................................................................11

22

23

*Destefano v. Zynga, Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946
   (N.D. Cal. Feb. 11, 2016)..................................................................12, 13

24

25

*Dusek v. Mattel, Inc.*,
   No. CV 99-10864-MRP, 2003 WL 27380801
   (C.D. Cal. Sept. 29, 2003)......................................................................20

26

27

28

1

2                                                                                                    **Page**

3

*Glass v. UBS Fin. Servs.*,
4         No. C-06-4068 MMC, 2007 WL 221862
5         (N.D. Cal. Jan. 26, 2007) ...........................................................................16

6   *Harris v. Marhoefer*,
          24 F.3d 16 (9th Cir. 1994) .........................................................................18
7
    *Hensley v. Eckerhart*,
8         461 U.S. 424 (1983)...................................................................................12

9   *Herman & MacLean v. Huddleston*,
          459 U.S. 375 (1983)....................................................................................8
10
    *In re Alstom SA Sec. Litig.*,
11        741 F. Supp. 2d 469 (S.D.N.Y. 2010) ......................................................14

12
    *In re Amgen Inc. Sec. Litig.*,
13        No. CV 7-2536 PSG, 2016 WL 10571773
          (C.D. Cal. Oct. 25, 2016) ...............................................................11, 15, 16
14
    *In re Banc of California Sec. Litig.*,
15        No. SACV 17-00118-DMG (DFM), slip op.
16        (C.D. Cal. Mar. 16, 2020) ..........................................................................16

17  *In re Brocade Sec. Litig.*,
          No. C 05-02042-CRB, slip op.
18        (N.D. Cal. Jan. 26, 2009) ...........................................................................18

19  *In re Daou Systems, Inc.*,
          411 F.3d 1006 (9th Cir. 2005) .....................................................................8
20
    *In re Diamond Foods, Inc., Sec. Litig.*,
21        No. C 11-05386 WHA, 2014 WL 106826
22        (N.D. Cal. Jan. 10, 2014) ...........................................................................16

23  *In re ECOtality, Inc. Sec. Litig.*,
          No. 13-cv-03791-SC, 2015 WL 5117618
24        (N.D. Cal. Aug. 28, 2015)...........................................................................11

25  *In re JDS Uniphase Corp. Sec. Litig.*,
          No. C-02-1486 CW (EDL), 2007 WL 4788556
26        (N.D. Cal. Nov. 27, 2007)...........................................................................14

27

28

Page

*In re King Res. Co. Sec. Litig*
    420 F. Supp. 610 (D. Colo. 1976) ............................................................... 12-13

*In re Lendingclub Sec. Litig.*,
    No. 3:16-cv-02627-WHA, slip op.
    (N.D. Cal. Sept. 24, 2018) ............................................................................17

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV-89-0090 E (M), 1990 WL 454747
    (S.D. Cal. Aug. 30, 1990) .............................................................................15

*In re MGM Mirage Sec. Litig.*,
    No. 2:09-cv-01558-GMN-VCF, slip op.
    (D. Nev. Mar. 1, 2016),
    *aff'd*, No. 16-15534 (9th Cir. Sept. 15, 2017) .....................................11, 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................11, 17, 18

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .......................................................................17

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    No. 3:10-md-2143 RS, 2016 WL 7364803
    (N.D. Cal. Dec. 19, 2016),
    *aff'd*, 804 F. App'x 445 (9th Cir. 2020) ......................................................18

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050
    (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010) .............................................................14

*In re Veritas Software Corp. Sec. Litig.*,
    396 F. App'x 815 (3d Cir. 2010) .................................................................20

*In re Veritas Software Corp. Sec. Litig.*,
    No. C-03-0283 MMC, 2005 WL 3096079
    (N.D. Cal. Nov. 15, 2005) ...........................................................................18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ...................................................10, 11, 12, 14

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .....................................14, 15, 20

1

2                                                                                          **Page**

3

4    *Internal Imp. Fund Trustees v. Greenough,*
        105 U.S. 527 (1881)...................................................................................10

5    *Luna v. Marvell Tech. Grp.,*
        No. C 15-05447 WHA, 2018 WL 1900150
6       (N.D. Cal. Apr. 20, 2018) ...............................................................11, 17, 18

7    *Maine State Ret. Sys. v. Countrywide Fin. Corp.,*
        No. 2:10-CV-00302 MRP, slip op.
8       (C.D. Cal. Dec. 5, 2013) .............................................................................18

9    *Missouri v. Jenkins,*
10      491 U.S. 274 (1989).....................................................................................15

11   *Morrison v. Nat'l Australia Bank Ltd.,*
12      561 U.S. 247 (2010).....................................................................................14

13   *Paul, Johnson, Alston & Hunt v. Graulty,*
        886 F.2d 268 (9th Cir. 1989) .................................................................. 10-11
14
     *Powers v. Eichen,*
15      229 F.3d 1249 (9th Cir. 2000) .....................................................................11

16   *Redwin v. Sino Clean Energy, Inc.,*
        No. CV 11-3936 PA(SSx), 2013 U.S. Dist. LEXIS 100275
17      (C.D. Cal. July 9, 2013) .................................................................................8

18   *Six (6) Mexican Workers v. Ariz. Citrus Growers,*
19      904 F.2d 1301 (9th Cir. 1990) ...............................................................10, 11

20   *Staton v. Boeing,*
21      327 F.3d 938 (9th Cir. 2003) .............................................................16, 19, 20

22   *Thurber v. Mattel, Inc.,*
        No. CV-99-10368-MRP, slip op.
23      (C.D. Cal. Oct. 1, 2003)................................................................................16

24   *Todd v. STAAR Surgical Co.,*
        No. CV 14-5263 MWF, 2017 WL 4877417
25      (C.D. Cal. Oct. 24, 2017) .............................................................................20

26   *Torrisi v. Tucson Elec. Power Co.,*
27      8 F.3d 1370 (9th Cir. 1993) ...................................................................10, 11

28

**Page**

*van Wingerden v. Cadiz, Inc.*,
No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263
(C.D. Cal. Feb. 8, 2017)..................................................................................14

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) .........................................................................10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................................. *passim*

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k(e) ...........................................................................................................6
§77l(a) .............................................................................................................6
§78u-4(a)(4) ...................................................................................................19

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2020 FULL-YEAR Review*
(January 25, 2021) ........................................................................................16

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES
AND AN AWARD TO SECURITIES ACT PLAINTIFF AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 3:19-cv-04744-WHA
4856-6570-7526.v5

- vi -

TO:    ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

PLEASE TAKE NOTICE that pursuant to an order of this Court dated October 6, 2021, on February 24, 2022, at 8:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable William Alsup, United States District Judge, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Robbins Geller Rudman & Dowd LLP will respectfully move for an order awarding attorneys' fees and expenses and an award for the Securities Act Plaintiff.

This motion is based on the following Memorandum in support thereof, the Declaration of X. Jay Alvarez filed on behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses (the "Robbins Geller Decl."); the Declaration of Arash Nasseri in Support of Final Settlement Approval and Motion for an Award of Attorneys' Fees and Expenses and an Award to State Action Plaintiff (the "Nasseri Decl."); the Revised Plan of Allocation dated June 3, 2021 (ECF No. 197-1) ("Revised Plan of Allocation")[1]; all other pleadings and matters of record; and such additional evidence or argument as may be presented before or at the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should approve Robbins Geller Rudman & Dowd LLP's motion for an award of attorneys' fees and expenses and an award for the Securities Act Plaintiff.

## I.    INTRODUCTION

When determining the appropriate award of attorneys' fees for a class settlement, lodestar gives some indication of work that was performed but conveys nothing about the effectiveness of the work – i.e., how much, if at all, the class benefited from it.  The unique trajectory of this case provides the Court with an unprecedented confirmation that the Securities Act claimants here benefited over $22.5 million from the work of the attorneys from Robbins Geller Rudman & Dowd LLP ("Robbins Geller").  Put bluntly, class counsel and the class representative ("Class Counsel

---

[1]    Unless otherwise noted, capitalized terms have the meanings set forth in the Revised Plan of Allocation.  Emphasis is added and citations are omitted throughout unless otherwise noted.

and Representative") attempted to enrich themselves and other Exchange Act of 1934 ("Exchange Act") claimants by at least $22.5 million, at the expense of Securities Act claimants. The only thing that stopped them was the Securities Act Plaintiff and Robbins Geller.

Without anyone at the negotiating table to protect Securities Act claimants, Class Counsel and Representative violated this Court's express order (ECF No. 50) by agreeing to, and submitting for approval, a settlement of Securities Act claims for which they had no standing and a plan of allocation ("POA") providing only $15 million for Securities Act claimants. The Securities Act Plaintiff and Robbins Geller immediately objected to this expressly prohibited maneuver. Class Counsel and Representative tried to defend their attempt to shortchange the Securities Act claimants, but after litigation against the Securities Act Plaintiff and Robbins Geller, and the guidance of Magistrate Judge Joseph C. Spero, they finally relented and agreed to return $22.5 million to the Securities Act claimants, bringing their total allocation to $37.5 million (29% of the total settlement).

In a cruelly ironic twist, however, because this was such a dramatic increase in the recovery for Securities Act claimants, the Court sought to ensure that Robbins Geller had not strong-armed a disproportionate allocation. The Court appointed a Special Master to review the Robbins Geller-obtained POA. The Special Master confirmed that Robbins Geller had prevented what would have been a grave injustice. The 29% allocation ($37.5 million) that Robbins Geller fought so hard to obtain for the Securities Act claimants, which equates to a recovery rate 2.21 times the rate for the Exchange Act claims, was still *lower* than every benchmark example the Special Master provided (ECF No. 258 at 16), but because the Court had not allowed the Securities Act Plaintiff and Robbins Geller to continue to prosecute their own case, it was sufficient. This means that under the original POA that Class Counsel and Representative tried to get past the Court, the $15 million allocation for Securities Act claimants was $22.5 million below a number that itself was slightly below what it should have been.

Under these circumstances, we respectfully submit that the allocation of attorneys' fees here should parallel the POA, such that Robbins Geller receives 29% of the total attorneys' fees

1   the Court awards in this matter.  Although the settlement Notice indicates that Class Counsel will

2   seek attorneys' fees of 18% of the $129 million settlement, given the unique facts and

3   circumstances of this case, a 12% rate would be more consistent with this Court's prior awards

4   (though less than half the Ninth Circuit benchmark).  A 12% fee award would amount to total

5   attorneys' fees of $15.48 million; a 29% share of those fees would amount to $4.49 million for

6   Robbins Geller.  Awarding Robbins Geller 29% of the attorneys' fees in this case will serve two

7   purposes.  First, it would protect the class from Class Counsel collecting fees for the Securities

8   Act recovery, as that would reward them for attempting to shortchange Securities Act claimants

9   by violating the Court's order and engaging in a conflict of interest.  And second, it would

10  compensate Robbins Geller for the portion of the settlement attributable to its efforts in the

11  Securities Act case and here – efforts largely opposed by Class Counsel.  A lodestar cross-check

12  confirms the reasonableness of Robbins Geller's request, as a 2.5 multiplier of Robbins Geller's

13  lodestar would amount to $4.52 million.  In any event, Robbins Geller maintains that Class

14  Counsel should not extract any fees for any recovery beyond the $91.5 million they recovered for

15  the Exchange Act claimants.  Robbins Geller also requests an award of its litigation expenses and

16  charges reasonably and necessarily incurred to prosecute this litigation in the amount of

17  $119,115.13, plus interest on both awards at the same rate as earned on the Settlement.  The fee

18  request is supported by the Securities Act Plaintiff who was actively involved in the prosecution

19  and resolution of the litigation.  Nasseri Decl., ¶1.

20       **A.    Background**

21       In October 2018, the Securities Act Plaintiff brought an action seeking to represent a

22  putative class of investors who acquired shares of Defendant Granite's ("Granite" or the

23  "Company") common stock in a June 2018 merger with Layne Christensen Company ("Layne"),

24  alleging violations of the Securities Act before the Hon. Timothy R. Volkmann in the Superior

25  Court for the State of California, County of Santa Cruz, captioned *Arash Nasseri v. Granite*

26  *Construction, Inc., et al.*, No. 19CV03208 (Cal. Super. Ct., Santa Cruz Cnty.).

27

28

1    The Securities Act Plaintiff alleged that the State Action defendants induced Layne

2 shareholders to approve the Merger by way of a materially false and misleading Registration

3 Statement.  Unbeknownst to Layne shareholders, at the time of the Merger several large-scale

4 projects had suffered crippling setbacks in Granite's Heavy Civil operating group (previously

5 named the Large Project Construction segment), including project disputes, cost overruns, design

6 defects and delays.  Furthermore, behind the scenes, Granite had entered into excessively punitive

7 contracts in order to inflate the Company's short-term financial results in the lead up to the Merger

8 despite the contracts' unfavorable risk/reward profile – deficiencies that would ultimately

9 exacerbate shareholder losses.  ECF No. 178-2, Ex. A, ¶¶42, 46.

10    On December 20, 2019, the State Action defendants filed their demurrer to the original

11 State Action complaint.  On February 18, 2020, the Securities Act Plaintiff filed its opposition and

12 defendants filed their reply brief March 20, 2020.  On July 30, 2020, the State Court granted

13 defendants' demurrer, and on September 15, 2020, the Securities Act Plaintiff filed an amended

14 complaint adding PricewaterhouseCoopers LLP as a defendant.

15    In July and August 2020, the State Action defendants admitted that the financial statements

16 set forth in the Registration Statement should not be relied upon because of misstatements and

17 would be restated.  *Id*., ¶4.  The misstatements specifically concerned Granite's Heavy Civil

18 operating group highlighted by the Company in connection with the Merger.  As Granite has

19 subsequently admitted, the "'Company did not consistently adhere to its standard operating

20 procedures for forecasting and risk management.'"  *Id*., ¶¶4, 6.  The restatement would "'result in

21 a decrease in the Company's net income'" for the year ended December 31, 2018.  *Id*., ¶87.

22    None of these allegations concerning Granite's restatement of the Company's financial

23 statements set forth in the Registration Statement were alleged in the Federal Plaintiff's amended

24 complaint.  Additionally, on March 18, 2021, the Securities Act Plaintiff filed a Notice of Recent

25 Developments in support of his opposition to the State Action defendants' demurrers to the

26 Securities Act Plaintiff's amended complaint, which quantified the restated financials set forth in

27 the Registration Statement.  ECF No. 178-2, Ex. B.  The restatement of the 2017 consolidated

28

1  financial statements resulted in Company revenue being adjusted downward by $35 million, net

2  income adjusted downward by $36 million and net income (diluted) per share to be adjusted

3  downward by $0.89.   These admissions and downward adjustments of financial information

4  supported the Securities Act Plaintiff's allegation of a misrepresentation – that the financial

5  statements State Action defendants made in support of the Merger were false when made.   As

6  confirmed by this Court, "Granite's accounting restatement represented an outsized boon to the

7  Section 11 claimants.   The restatement provided all the fodder they would need to establish that

8  Granite had previously, and materially, misled investors.   Furthermore, our Section 11 claimants

9  would only need to prove that a misleading omission and/or misrepresentation materially affected

10  shareholders on one day: the day on which Granite shareholders voted to merge with Layne

11  Christiansen."   ECF No. 263 at 5.

12      The pending Granite restatement information was added to the amended complaint.   On

13  November 17, 2020, defendants filed two separate demurrers to the amended complaint.   On April

14  6, 2021, Judge Timothy R. Volkmann denied the State Action Defendants' second demurrer.

15      Two days later, the Federal Plaintiff reached a $129 million Settlement with the Federal

16  Defendants, attempting to release the Securities Act Plaintiff's Securities Act claims – despite a

17  lack of standing and the fact that these claims were not even alleged in the Federal Action – without

18  the participation of the Securities Act Plaintiff, essentially attempting to parlay the strength of the

19  claims alleged in the State Action into a better Settlement for the Federal Plaintiff and a broader

20  release for the Federal Defendants.   As the Federal Plaintiff would later admit in open court, the

21  Securities Act claims – which had only been filed and prosecuted by the Securities Act Plaintiff –

22  were included in the Settlement at the insistence of Defendants and thus constituted a material

23  portion of the $129 million Settlement.   *See* Preliminary Approval and Motion to Intervene Hrg.

24  Tr. at 19:5-7 (Borkon: "We entered each of our three mediation sessions . . . resisting any inclusion

25  of the merger shares . . . ."); at 47:20-24 (Fry: "[F]rom the defendant[s'] perspective, we could

26  only settle this case if it included all of the claims . . . that would encompass the Section 11 and 12

27

28

1  claims . . . .").  Put simply, if the Securities Act Plaintiff had never filed and pursued his Securities

2  Act claims, the value of the Settlement would have been materially lower.

3          The Federal Plaintiff, who purchased Granite shares on the open market, did not bring a

4  Securities Act claim or seek class certification of these claims prior to settlement because it had

5  no standing to do so.  Instead, it tried to settle the Securities Act claims out from under the

6  Securities Act Plaintiff after excluding the Securities Act Plaintiff and his counsel (Robbins Geller)

7  from all settlement discussions.  Moreover, with no one looking out for the interests of the

8  Securities Act claimants, the Federal Plaintiff and Federal Defendants did exactly what the Court

9  would expect: they negotiated a Settlement that shortchanged the Securities Act claims to subsidize

10 the Federal Plaintiff's claims.  Only through the tenacious and diligent work of Robbins Geller

11 was this vastly inadequate Settlement for the Securities Act claimants remedied.

12         **B.      Motion to Intervene**

13         On May 14, 2021, the Securities Act Plaintiff moved to intervene pursuant to Federal Rule

14 of Civil Procedure ("Rule") 24(a) and 24(b) for the purpose of filing an opposition to the proposed

15 Settlement based on two grounds: (1) the Federal Plaintiff does not have standing to bring claims

16 for violations of the Securities Act brought by the Securities Act Plaintiff and cannot release those

17 claims through the proposed Settlement; and (2) the Federal Plaintiff is not an adequate class

18 representative for the Securities Act claimants as evidenced by the original proposed Plan of

19 Allocation, which failed to follow the statutory formulae contained in §§11(e) and 12(a) of the

20 Securities Act and unfairly and inequitably reduced the recognized losses of the Securities Act

21 claimants by as much as 90%.  ECF Nos. 179, 179-1.

22         On June 3, 2021, the Securities Act Plaintiff filed an Amended Motion to Intervene

23 (ECF No. 199); on July 14, 2021, the Court held a hearing on the Securities Act Plaintiff's motion

24 to intervene and granted that motion.  ECF No. 232.

25         **C.      Mediation Before Magistrate Judge Joseph C. Spero**

26         On May 24, 2021, the Securities Act Plaintiff filed a Mediation Statement supported by

27 exhibits.  On May 27, 2021, the Federal Plaintiff and the Securities Act Plaintiff participated in a

28

1    mediation with the assistance of Chief Magistrate Judge Joseph C. Spero.  Arash Nasseri, the

2    Securities Act Plaintiff, attended the mediation via zoom conference.  As a result of the mediation,

3    with Magistrate Judge Spero's assistance and a mediator's proposal, the parties were able to

4    resolve the issues related to the calculation of the Securities Act claimants' losses under the

5    original Plan of Allocation, with the Securities Act Plaintiff securing a revised allocation for

6    Securities Act claimants of $37.5 million – 250% of what the federal parties had previously

7    allocated.  This increased allocation was a direct result of the Securities Act Plaintiff advocating

8    for the Securities Act claimants and the work of Robbins Geller.

9        **D.      Response to the Court's Request for Further Briefing**

10       After the mediation before Judge Spero where the parties agreed, after an arm's-length

11   negotiation, that $37.5 million of the total $129 million total Settlement should be allocated to the

12   Securities Act claimants, the Court had numerous questions regarding the revised plan of

13   allocation.  On June 12, 2021 (ECF No. 207) June 18, 2021 (ECF No. 218) and June 22, 2021

14   (ECF No. 222), the Court requested supplemental briefing on many issues related to the issues

15   resolved by Magistrate Judge Spero.  The Securities Act Plaintiff and Robbins Geller fully briefed

16   a response to each of the Court's orders, and which and which were ultimately instrumental in

17   obtaining the Court's preliminary approval of the Settlement.

18       **E.      The Court's Request for a Special Master**

19       Out of an abundance of caution and to ensure the fairness of the Settlement, the Court

20   appointed a special master to assist the Court in connection with considering the appropriate plan

21   of allocation.  Pursuant to the Court's subsequent order, the Special Master was assigned to

22   "promptly prepare and file with the Court a report and recommendation to the Court concerning

23   the plan of allocation – specifically, 'to evaluate the strengths of the Section 10 claims against all

24   typical Section 10 claims and to evaluate the strength of the Section 11 claims compared to typical

25   Section 11 claims, so that the Court can decide on a plan of allocation.'"  ECF No. 257 (quoting

26   ECF No. 237).

27

28

1    On August 27, 2021 the Securities Act Plaintiff submitted a brief to the Special Master

2    regarding the plan of allocation and the questions the Court posed to the Special Master.  After

3    reviewing the numerous briefing submitted by both parties regarding this Settlement, on

4    September 16, 2021, the Special Master confirmed what the Securities Act Plaintiff had been

5    arguing all along, specifically:

> **The '33 Act claims are far stronger than the typical '33 Act claims, thanks to the accounting restatement.  Essentially all a Section 11 claimant must prove is a (1) misstatement or omission that is (2) material.**  [*In re Daou Systems, Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)].  **The restatement accomplishes that task.**  True, defendants likely will attempt to mount a negative loss causation affirmative defense, but the burden is on them and the evidence we have suggests they will have difficulty meeting that burden.

10   ECF No. 258 at 12.  As a result of that relative strength, the Special Master confirmed that the

11   multiplier (the ratio between the Securities Act claims and the Exchange Act claims) of 2.21 is

12   *below* each example calculation the Special Master compiled (ECF No. 258 at 16), but under the

13   circumstances "represents a fair, adequate, and reasonable allocation of the $129 million

14   Settlement given the relative strengths and weaknesses of the Section 10(b) and Section 11

15   claims."  ECF No. 258-2 at 17.

16   Significantly, the Special Master found that none of the Securities Act Plaintiff's

17   allegations concerning Granite's restatement of the Company's financial statements set forth in

18   the Registration Statement had been alleged in the Federal Plaintiff's amended complaint.  Instead,

19   the Federal Plaintiff was only pursuing fraud causes of action under the Exchange Act, which

20   "requires a plaintiff to carry a heavier burden to establish a cause of action."  *Herman & MacLean*

21   *v. Huddleston*, 459 U.S. 375, 382 (1983).  This "heavier burden" requires proof of fraudulent

22   intent, reliance and causation – elements of proof not required to prevail on the Securities Act

23   claims.  *Id.*; *see Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460-61 (2013)

24   (noting elements of a private securities fraud action).  Thus, unlike the Securities Act claims here

25   where liability is a near certainty, whether the Exchange Act claims would prevail at trial is very

26   much uncertain and depends greatly on evidence of a person's state of mind, and intention – among

27   the most difficult matters of proof.  *Redwin v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA(SSx),

28

1   2013 U.S. Dist. LEXIS 100275, at *19 (C.D. Cal. July 9, 2013) ("Courts experienced with

2   securities fraud litigation 'routinely recognize that securities class actions present hurdles to

3   proving liability that are difficult for plaintiffs to clear.'").

4           In short, through the work performed by Securities Act Counsel, the Securities Act

5   claimants are now fully represented and entitled to recover a significant premium on the original

6   Settlement agreed to by the Federal Plaintiff – *the value of the Settlement is now 250% of what it*

7   *had been, from $15 million to $37.5 million*.  Absent the faithful efforts of the Securities Act

8   Plaintiff to file a complaint to preserve and protect the Securities Act claims at issue, to zealously

9   prosecute these claims for more than two years, and to move to intervene in the federal action to

10  ensure an equitable allocation of Settlement proceeds, and the work performed by his counsel,

11  investors with Securities Act claims would have been left with a substantially reduced recovery,

12  despite the well-documented strength of their claims.

13          **F.      Additional State Court Litigation Efforts**

14          After Judge Volkmann denied the State Action's defendants' demurrer, on May 14, 2021,

15  the Securities Act Plaintiff served discovery on defendants.  And on May 21, 2021, the Securities

16  Act Plaintiff filed a motion for class certification.  On July 22, 2021, defendants moved to stay the

17  State Action in its entirety pending resolution of the claims in the Federal Action.  The Securities

18  Act Plaintiff prepared and filed its brief in opposition to this motion on August 9, 2021.  Following

19  oral argument Judge Volkmann issued a ruling from the bench denying Defendants' motion to

20  stay, and allowing the State Action to go forward.

21          Pursuant to the motion for class certification, the Securities Act Plaintiff responded to

22  Defendants Request for Production of Documents on September 3, 2021 and the Securities Act

23  Plaintiff sat for his deposition on September 8, 2021.

24

25

26

27

28  NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES
    AND AN AWARD TO SECURITIES ACT PLAINTIFF AND MEMORANDUM OF POINTS AND
    AUTHORITIES IN SUPPORT THEREOF - 3:19-cv-04744-WHA                          - 9 -
    4856-6570-7526.v5

1

**II.    THE 12% FEE AWARD OF THE 37.5 MILLION RECOVERED FOR THE**
2      **SECURITIES ACT CLAIMANTS IS WELL BELOW THE NINTH**
       **CIRCUIT BENCHMARK OF 25% AND CERTAINLY WITHIN THE**
3      **MARKET RATE IN SIMILAR COMPLEX, CONTINGENT LITIGATION**

**A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate**
4          **Method for Awarding Attorneys' Fees in Common Fund Cases**

5              For advocating on behalf of the Securities Act Plaintiffs and securing an improved award,

6      counsel seek a reasonable percentage of the common fund as attorneys' fees.  The percentage

7      method of awarding fees is a well-tested and accepted method for awarding fees in common fund

8      cases in this Circuit and throughout the United States.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d

9      1043, 1047 (9th Cir. 2002).

10             It has long been recognized that "a private plaintiff, or his attorney, whose efforts create,

11     discover, increase or preserve a fund to which others also have a claim is entitled to recover from

12     the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.*,

13     557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so

14     that "those who benefit from the creation of the fund should share the wealth with the lawyers

15     whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

16     1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is firmly

17     rooted in American case law.  *See, e.g., Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527

18     (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

19             The Supreme Court recognized in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), that,

20     under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund

21     bestowed on the class."  While the district court has discretion to award fees in common fund cases

22     based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method

23     (*WPPSS*, 19 F.3d at 1296), the Ninth Circuit has expressly and consistently approved the use of

24     the percentage method in common fund cases.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d

25     268, 272 (9th Cir. 1989); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311

26     (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993); *Vizcaino*,

27     290 F.3d at 1050 ("the primary basis of the fee award remains the percentage method"); *see Booth*

28

1    *v. Strategic Realty Tr., Inc.*, No. 13-cv-04921-JST, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15,

2    2015) ("'Because the benefit to the class is easily quantified in common-fund settlements,' the

3    Ninth Circuit permits district courts 'to award attorneys a percentage of the common fund in lieu

4    of the often more time-consuming task of calculating the lodestar.'"); *In re ECOtality, Inc. Sec.

5    Litig.*, No. 13-cv-03791-SC, 2015 WL 5117618, at *3-*4 (N.D. Cal. Aug. 28, 2015). And the

6    supporting authority for the percentage method in other circuits is overwhelming.

7        **B.     A Percentage Fee of 3.48% of the Total Settlement and 12% of the
                  $37.5 Million Recovered for the Securities Act Claimants Is
8                 Reasonable**

9        In *Paul, Johnson*, 886 F.2d at 272, the Ninth Circuit established 25% of a common fund as

10   the "benchmark" award for attorneys' fees. *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25%

11   benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same). The guiding principle

12   in this Circuit is that a fee award be "'reasonable under the circumstances.'" *WPPSS*, 19 F.3d at

13   1296 (emphasis omitted). The requested fee here is not only reasonable given the facts of the case,

14   but it is also significantly less than the Ninth Circuit's 25% "benchmark" fee. S*ee, e.g.*, *Six (6)

15   Mexican Workers*, 904 F.2d at 1311; *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx),

16   2016 WL 10571773, at *9-*10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement,

17   plus expenses); *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-VCF, slip op. at 1 (D.

18   Nev. Mar. 1, 2016), *aff'd*, No. 16-15534, ECF No. 63-1 (9th Cir. Sept. 15, 2017) (awarding 25%

19   of $75 million settlement, plus expenses). It is also below what amounted to a 18.76% fee award

20   from this Court on a $72.5 million settlement in *Luna v. Marvell Tech. Grp.*, No. C 15-05447

21   WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018).

22       "The Ninth Circuit has approved a number of factors which may be relevant to the district

23   court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and

24   the quality of work; (4) the contingent nature of the fee and the financial burden carried by the

25   plaintiffs; and (5) awards made in similar cases." *de Mira v. Heartland Emp. Serv., LLC*, No. 12-

26   CV-04092 LHK, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014); *accord Vizcaino*, 290 F.3d

27   at 1048; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Each of

28

1 these factors supports the 3.48% fee award, which is significantly less than the 25% benchmark in

2 this Circuit.

### 1.    The Results Achieved

4          Courts have consistently recognized that the result achieved is a major factor to be

5 considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical

6 factor is the degree of success obtained"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016

7 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The overall result and benefit to the class from the

8 litigation is the most important factor in granting a fee award."); *Behrens v. Wometco Enters., Inc.*,

9 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles

10 before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

11         Here, the Securities Act Plaintiff successfully intervened on behalf of a class of Securities

12 Act claimants in order to achieve an improved allocation for those claimants neglected by the

13 Federal Plaintiff as it failed to recognize the strength of their Securities Act claims.  On behalf of

14 those claimants, Robbins Geller achieved an outstanding result – a 150% increase in the Securities

15 Act claimants' share of the Settlement from the original Plan of Allocation.  The result achieved

16 is plainly stated: an additional $22.5 million provided to the Securities Act claimants as a result of

17 Robbins Geller's work.

### 2.    The Risks of the Litigation and the Novelty and Difficulty of the Questions Presented

19         Numerous cases have recognized that risk as well as the novelty and difficulty of the issues

20 presented are important factors in determining a fee award.  *See, e.g., Vizcaino*, 290 F.3d at 1048;

21 *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be obtained is highly

22 relevant in determining risk.  *Id*. at 1300.  As the court aptly observed in *In re King Res. Co. Sec.*

23 *Litig.*:

25              In evaluating the services rendered in this case, appropriate consideration
              must be given to the risks assumed by plaintiffs' counsel in undertaking the
26              litigation.  The prospects of success were by no means certain at the outset, and
              indeed, the chances of success were highly speculative and problematical.

1   420 F. Supp. 610, 632, 636-37 (D. Colo. 1976); *see also Zynga*, 2016 WL 537946, at *18 ("[W]hen

2   counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment

3   after years of litigation justifies a significant fee award.").

4       Of course, it is impossible to predict how a jury would assess a complex trial involving

5   issues raised by Securities Act claims or how an appellate court would view the myriad issues that

6   arise in lengthy litigations.  The bottom line is that Robbins Geller has invested into this litigation

7   over 2,000 hours of time and has incurred litigation expenses of $119,115.13, and this time and

8   these expenses were never safe.  Tripping over any of the many hurdles a case such as this

9   presented would have been catastrophic for the Securities Act claimants as well as for Robbins

10   Geller.  Therefore, this factor further supports the requested fee.

11   ### 3.    The Skill Required and the Quality and Efficiency of the Work

12       The "'prosecution and management of a complex national class action requires unique

13   legal skills and abilities.'"  *Zynga*, 2016 WL 537946, at *17.  Robbins Geller is a nationally

14   recognized leader in the fields of securities class actions and complex litigation.  *See* Exhibit G to

15   Robbins Geller Decl.  The recovery obtained for the Class is the direct result of Robbins Geller's

16   expertise and the significant efforts of its highly skilled and specialized attorneys.  *See*

17   www.rgrdlaw.com.  Courts have regularly recognized that the efforts of plaintiffs' counsel in

18   achieving a favorable settlement should be accorded greater weight when achieved without the

19   benefit of a completed governmental investigation as was the case here.

20       From the outset of this litigation, Robbins Geller made a concerted effort to obtain the

21   maximum recovery for the Securities Act claimants.  Here Securities Act Counsel faced opposition

22   from very skilled and determined counsel at Munger, Tolles & Olson LLP and also dealt with and

23   negotiated the proposed Settlement with Federal Plaintiff's counsel Bleichmar Fonti & Auld LLP.

24   This raised Securities Act Counsel's risk, and there is only a small pool of lawyers who could

25   credibly meet this challenge in reaching the Settlement on behalf of the Securities Act claimants

26   in this case.  *See, e.g., Zynga*, 2016 WL 537946, at *17 ("The quality of opposing counsel is also

27   relevant to the quality and skill that class counsel provided.").

28   NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES
AND AN AWARD TO SECURITIES ACT PLAINTIFF AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 3:19-cv-04744-WHA    - 13 -
4856-6570-7526.v5

4.     **The Contingent Nature of the Fee and the Financial Burden Carried by Securities Act Counsel**

A determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the Settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.  *See* Richard Posner, Economic Analysis of Law §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299.  Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of nonpayment in common fund cases."  *van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  For example, in *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Securities Act Counsel prosecuted, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million.  In another case, after a lengthy trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in defendants' favor.  *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).

Similarly, even the most promising case can be eviscerated by a sudden change in the law after years of litigation.  *See, e.g., In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010)).  As the court in *Xcel* recognized,

"[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Plaintiffs who defeat summary judgment and succeed at trial may even find their judgment overturned on appeal or on a post-trial motion.  "[S]ettlement eliminates the risk that the jury might award less than the amount of the settlement or nothing at all to the class." *Amgen*, 2016 WL 10571773, at *3.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  Nevertheless, Robbins Geller committed significant resources of both time and money to vigorously and successfully prosecute this action for the Securities Act Plaintiffs' benefit.  *See* Exhibits A-B to Robbins Geller Decl.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5.  The 12% Fee Award Is Well Within the Market Rate in Similar Complex, Contingent Litigation

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989); *see also Vizcaino*, 290 F.3d at 1050 ("[I]n most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").  If this were a non-representative action, the customary fee arrangement would be contingent on a percentage basis and in the range of 30% to 40% of the recovery.  *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV-89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

1   In a common fund case, the district court can determine the amount of attorneys' fees to be

2   drawn from the fund by employing a "percentage" method. *See Staton v. Boeing*, 327 F.3d 938,

3   968 (9th Cir. 2003) (citation omitted). The Ninth Circuit has established 25% of the common fund

4   as a benchmark for attorneys' fees. *Id.*; *see also Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC,

5   2007 WL 221862, *14 (N.D. Cal. Jan. 26, 2007).

6   Courts also look to fees awarded in comparable cases to determine if the requested fee is

7   reasonable. *Vizcaino*, 290 F.3d at 1050 n.4. The total requested 12% fees are reasonable when

8   compared to recent fees awarded within the Ninth Circuit in other comparable complex cases: *See,*

9   *e.g.*, *Amgen*, 2016 WL 10571773, at *9-*10 (awarding 25% fee plus expenses in $95 million

10   settlement); *Thurber v. Mattel, Inc.*, No. CV-99-10368-MRP (CWx), slip op. at 2 (C.D. Cal. Oct. 1,

11   2003) (awarding fee equal to 27% of $122 million recovery, plus expenses); *MGM*, slip op. at 1

12   (awarding fee of 25% of $75 million recovery, plus expenses); *Vizcaino*, 290 F.3d at 1050

13   (awarding 28% fee of $96.8 million settlement); *In re Banc of California Sec. Litig.*, No. SACV

14   17-00118-DMG (DFM), slip op. at ¶4 (C.D. Cal. Mar. 16, 2020) (awarding fee of 33% of

15   $19.75 million recovery, plus expenses).

16   The requested fees are also decidedly less than the median fee award for securities cases

17   based on a recent analysis of fee awards conducted by NERA. Using data from securities class

18   actions from 2011 through 2020, the study found that for settlements between $100 million and

19   $500 million, the median fee award was 23% of the settlement amount. *See* Janeen McIntosh and

20   Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 FULL-YEAR Review*

21   (January 25, 2021) at 23, Fig. 19. This factor further supports the requested fees.

22   In *Diamond Foods*, another securities class action, this Court awarded a fee of

23   $17.33 million which was equal to 14% of the $123.8 million primarily **non-cash** settlement. *In*

24   *re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at *5 (N.D. Cal.

25   Jan. 10, 2014). Here, Securities Act Counsel seek 12% of the $37.5 million allocated to their

26   Securities Act claimants, in an amount that is significantly less than that awarded in *Diamond*

27

28   NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES
AND AN AWARD TO SECURITIES ACT PLAINTIFF AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 3:19-cv-04744-WHA
4856-6570-7526.v5

1    *Foods*.  The requested fee percentage is warranted based on both the risk assumed in taking this

2    difficult case to its current stage and the result obtained.

3        This Court also awarded $13.6 million in attorneys' fees in *Marvell*, which amounted to

4    18.76% of the $72.5 million settlement.  *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018

5    WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018).

6        Likewise, in *Lendingclub*, this Court awarded $16.38 million in attorney's fees, plus

7    expenses and interest amounting to 13.1% of a $125 million settlement.  *In re Lendingclub Sec.*

8    *Litig.*, No. 3:16-cv-02627-WHA, slip op. at 4-5 (N.D. Cal. Sept. 24, 2018).  Here, Securities Act

9    Counsel – with the express endorsement of Securities Act Plaintiff – respectfully requests

10   attorneys' fees well below the percentage of fees awarded in *Marvell* and *Lendingclub*.

11   **C.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check**
         **Analysis**

12       Although Counsel seek approval of a fee based on a percentage of the recovery, "[a]s a

13   final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks

14   as a percentage with what their hourly bills would amount to under the lodestar analysis."

15   *Omnivision*, 559 F. Supp. 2d at 1048; *see also Marvell*, 2018 WL 1900150, at *4.  In *Vizcaino*, the

16   Ninth Circuit noted that an analysis of the "lodestar method is merely a cross-check on the

17   reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates

18   incentives for counsel to expend more hours than may be necessary on litigating a case so as to

19   recover a reasonable fee, since the lodestar method does not reward early settlement."  290 F.3d

20   at 1050 n.5.  "The lodestar method requires 'multiplying the number of hours the prevailing party

21   reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

22   hourly rate for the region and for the experience of the lawyer.'"  *In re Online DVD-Rental*

23   *Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

24       Here, Counsel spent 2,127.30 hours of attorney and paraprofessional time prosecuting this

25   action on the Securities Act claimants' behalf.  Robbins Geller Decl., ¶4.  The resulting lodestar is

26   $1,807,481.00, representing a multiplier of 2.48 which amounts to $4,489,200.00, confirming the

27   reasonableness of our request.  In fact, the Ninth Circuit in *Vizcaino* approved a 28% fee that

28

resulted in a 3.65 multiplier.  290 F.3d at 1051-52 (finding multipliers ranged as high as 19.6 though most run from 1.0-4.0); *see also Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP (MANx), slip op. at 31-32 (C.D. Cal. Dec. 5, 2013) (awarding $85 million fee representing 2.11 multiplier); *In re Brocade Sec. Litig.*, No. C 05-02042-CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) (3.5 multiplier); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (4.0 multiplier); *Marvell*, 2018 WL 1900150, at *4 (2.0 multiplier).  The multiplier here is right in the middle of the range approved by the Ninth Circuit.

## III.   THE EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Securities Act Counsel also requests $119,115.13 in litigation expenses incurred prosecuting the case.  These expenses are categorized in the Robbins Geller Declaration submitted to the Court herewith.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *see also Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").  Since the categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and were required to prosecute this litigation, they should be paid out of the common fund.  *See In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *10 (N.D. Cal. Dec. 19, 2016) ("Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action."), *aff'd*, 804 F. App'x 445 (9th Cir. 2020).

1    The largest component of Securities Act Counsel's expenses is the cost of their expert, who

2    provided valuable assistance, an expert report, and economic analyses, all necessary to the result

3    achieved on behalf of Securities Act claimants.  *See* Robbins Geller Decl., ¶8(c)(i).  As discussed

4    in the Robbins Geller Declaration, this expert expended significant time on the case analyzing the

5    facts, drafted a detailed report, and assisted in answering the many questions the Court had

6    regarding the revised Plan of Allocation.  In addition, expenses were incurred in connection with

7    services performed by an outside investigation firm which assisted in locating, identifying and

8    interviewing percipient witnesses.  Robbins Geller Decl., ¶8(c)(ii).

9    Other expenses include the costs of computerized research.  Robbins Geller Decl., ¶8(e).

10   These are the charges for computerized factual and legal research services, including LexisNexis

11   Products, Westlaw, Transunion Acquisition, Thomson Financial, and PACER.  It is standard

12   practice for attorneys to use these services to assist them in researching legal and factual issues.

13   These services allowed counsel to do online legal research, access Granite's SEC filings, perform

14   media searches on Granite, and obtain analysts' reports on Granite.

15   As a cross-check on the reasonableness of these expenses, all requested expenses represent

16   less than .092% of the Settlement.  This is very reasonable compared to the 1.3% median expense

17   percentage that NERA found in its 2017 study for cases that settled between 2012 and 2017 in the

18   $100 million to $500 million range.  *See* 2017 NERA Study at 42, Fig. 33.

**IV.    SECURITIES ACT PLAINTIFF'S REQUEST FOR AN AWARD
         PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE**

21   Securities Act Plaintiff seeks an award of $12,875.00 to reimburse him for the time he

22   dedicated to the prosecution of the action on behalf of Securities Act Plaintiffs, pursuant to §78u-

23   4(a)(4) in connection with his representation of the putative class, as detailed in the accompanying

24   Nasseri Declaration.  Under the PSLRA, a class representative may seek an award of reasonable

25   costs and expenses (including lost wages) directly relating to the representation of the class.  *See*

26   15 U.S.C. §78u-4(a)(4); *see also Staton*, 327 F.3d at 977 (holding that named plaintiffs are eligible

27   for "reasonable" payments as part of a class action settlement).  Thus, courts have awarded

28   reasonable payments to compensate class representatives for the time, effort, and expenses devoted

1  to litigating on behalf of the class.  *See, e.g.*, *Dusek v. Mattel, Inc.*, No. CV 99-10864-MRP (CWx),

2  2003 WL 27380801, at *1 (C.D. Cal. Sept. 29, 2003) (awarding $117,426 to three lead plaintiffs).

3  When evaluating the reasonableness of a lead plaintiff award, courts may consider factors

4  such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which

5  the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended

6  in pursuing the litigation'" among others.  *Staton*, 327 F.3d at 977.  As detailed in the Nasseri

7  Declaration, he devoted significant time and effort to actively participating in and monitoring the

8  litigation and providing input on litigation and settlement strategy.  Nasseri Decl., ¶4.  The

9  Securities  Act  Plaintiff  participated  in  numerous  meetings,  phone  conferences,  and

10  correspondence with counsel; attended a mediation session with Judge Spero and a Court hearing

11  on the Settlement; reviewed numerous materials, including pleadings, briefs, motions and the

12  orders of this Court and in the State Action; and produced responsive documents and information

13  and provided deposition testimony.  *Id.*  Courts have approved as reasonable awards for class

14  representatives sums that are greater than what the Securities Act Plaintiff is requesting here.  *See,*

15  *e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14-CV-02129-MMA-AGS, 2020 WL 4260712, at *12 (S.D.

16  Cal. July 24, 2020) (noting "persuasive authority supporting approval of the requested awards 'to

17  compensate representative plaintiffs for the time and effort they spent on behalf of a class'" and

18  approving awards of $10,569 and $60,000 for $65 million settlement); *Todd v. STAAR Surgical*

19  *Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) (awarding

20  $10,000 award); *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 816 (3d Cir. 2010)

21  ($15,000 awarded to each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-

22  LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 award); *Xcel*, 364 F. Supp. 2d

23  at 1000 (awarding $100,000 to lead plaintiffs because of "the important policy role [lead plaintiffs]

24  play in the enforcement of the federal securities laws on behalf of persons other than themselves").

25  The requested $12,875.00 award is reasonable in light of the Securities Act Plaintiff's significant

26  contribution to this litigation in order to protect the interests of absent Class Members, in particular

27

28

1   the interests of Securities Act claims who would have had their claims expire but for the diligent

2   and faithful work of the Securities Act Plaintiff.

3   **V.       CONCLUSION**

4          Robbins Geller's efforts on behalf of the Securities Act claimants resulted in an outstanding

5   result under any measure.  Based on the foregoing and upon the entire record herein, Robbins

6   Geller respectfully requests that the Court award it 29% of the total fee award in this matter, plus

7   expenses in the amount of $119,115.13 plus interest on both amounts earned at the same rate and

8   for the same period as that earned on the Settlement until paid and an award to Securities Act

9   Plaintiff of $12,875.00 for time and efforts in prosecution and oversight of this action.

10   DATED:  December 15, 2021                 Respectfully submitted,

11                                            ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
12                                            X. JAY ALVAREZ
                                             DEBRA J. WYMAN
13                                            JASON A. FORGE
                                             BRIAN E. COCHRAN
14

15                                                   s/ X. JAY ALVAREZ
16                                               X. JAY ALVAREZ

17                                            655 West Broadway, Suite 1900
                                             San Diego, CA  92101-8498
18                                            Telephone:  619/231-1058
                                             619/231-7423 (fax)
19                                            jaya@rgrdlaw.com
                                             dwyman@rgrdlaw.com
20                                            jforge@rgrdlaw.com
                                             bcochran@rgrdlaw.com
21
                                             ROBBINS GELLER RUDMAN
22                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
23                                            58 South Service Road, Suite 200
                                             Melville, NY  11747
24                                            Telephone:  631/367-7100
                                             631/367-1173 (fax)
25                                            srudman@rgrdlaw.com

26                                            Attorneys for Securities Act Plaintiff

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

   I hereby certify under penalty of perjury that on December 15, 2021, I authorized the

3

electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will

4

send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List,

5

and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service

6

to the non-CM/ECF participants indicated on the attached Manual Notice List.

7

   s/ X. JAY ALVAREZ
   X. JAY ALVAREZ

8

9

ROBBINS GELLER RUDMAN
   & DOWD LLP

10

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

11

12

E-mail:  jaya@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4856-6570-7526.v5

**Mailing Information for a Case 3:19-cv-04744-WHA The Police Retirement System of St. Louis v. Granite Construction Incorporated et al**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  JayA@rgrdlaw.com,e_file_SD@rgrdlaw.com,mwaligurski@rgrdlaw.com

- **George N. Bauer**
  gbauer@bfalaw.com,ctamondong@bfalaw.com

- **Javier Bleichmar**
  jbleichmar@bfalaw.com

- **Daniel H. Bookin**
  dbookin@omm.com,daniel-bookin-0689@ecf.pacerpro.com,LitigationCalendar@omm.com,rgonzalez@omm.com

- **Peter E. Borkon**
  pborkon@bfalaw.com

- **Sharon M. Bunzel**
  sbunzel@omm.com,sharon-bunzel-1953@ecf.pacerpro.com,jniehaus@omm.com,sbakhshay@omm.com,rgonzalez@omm.com

- **Benjamin Francis Burry**
  bburry@bfalaw.com

- **Brian Edward Cochran**
  bcochran@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Gregory Eric Del Gaizo**
  gdelgaizo@robbinsllp.com,notice@robbinsllp.com

- **Bruce A. Ericson**
  bruce.ericson@pillsburylaw.com

- **Bruce A. Ericson**
  bruce.ericson@pillsburylaw.com,firmwidecalendardocket@pillsburylaw.com,john-mcandrew-3177@ecf.pacerpro.com,docket@pillsburylaw.com

- **Joseph A. Fonti**
  jfonti@bfalaw.com,ecfnotifications@bfalaw.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David H. Fry**
  frydh@mto.com,julie.lunsford@mto.com,dkt-filings@mto.com

- **Brendan Benjamin Gants**
  brendan.gants@mto.com

- **Evan Asher Kubota**
  ekubota@bfalaw.com

- **Andrew R Lewis**
  andrew.lewis@mto.com,aileen.beltran@mto.com

- **Charles Henry Linehan**
  clinehan@glancylaw.com,charles-linehan-8383@ecf.pacerpro.com

- **Sahar Maali**
  sahar.maali@wilmerhale.com

- **Megan Leigh McCreadie**
  megan.mccreadie@mto.com

- **Michael A Mugmon**
  michael.mugmon@wilmerhale.com,taryn.mccarthy@wilmerhale.com,patricia.shore@wilmerhale.com,noah.guiney@wilmerhale.com,sahar.maali@wilmerhale.com,W

- **Amy S. Park**
  apark@omm.com,amy-park-6600@ecf.pacerpro.com

- **Marion Curry Passmore**
  passmore@bespc.com,ecf@bespc.com

- **Achyut Jayant Phadke**
  achyut.phadke@mto.com,robyn.bird@mto.com,raphael.sepulveda@mto.com,dkt-filings@mto.com

- **Lesley F. Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com,clinehan@glancylaw.com,lesley-portnoy-3007@ecf.pacerpro.com,charles-linehan-8383@ecf.pacerpro.com

- **Pavithra Rajesh**
  prajesh@glancylaw.com,pavithra-rajesh-9402@ecf.pacerpro.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com

- **Ross M. Shikowitz**
  rshikowitz@bfalaw.com

- **Craig Wallace Smith**
  notice@robbinsllp.com,csmith@robbinsllp.com

- **John W. Spiegel**
  john.spiegel@mto.com,stonelc@mto.com,finchac@mto.com,berryjm@mto.com,voigtsam@mto.com

- **Thayne Darrell Stoddard**
  tstoddard@bfalaw.com

- **Hartley M.K. West**
  hartley.west@dechert.com,michelle.ekas@dechert.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)