**BLEICHMAR FONTI & AULD LLP**
Peter E. Borkon (Bar No. 212596)
pborkon@bfalaw.com
555 12th Street, Suite 1600
Oakland, California 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020

**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (*pro hac vice*)
jbleichmar@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Tel: (212) 789-1340
Fax: (212) 205-3960

*Class Counsel and Counsel for Class Representative
the Police Retirement System of St. Louis*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE POLICE RETIREMENT SYSTEM OF ST. LOUIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GRANITE CONSTRUCTION INCORPORATED, JAMES H. ROBERTS, JIGISHA DESAI, and LAUREL J. KRZEMINSKI,<br><br>Defendants. | Case No. 3:19-cv-04744-WHA<br><br><u>CLASS ACTION</u><br><br>**CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 24, 2022<br>Time: 8:00 A.M.<br>Dept.: Courtroom 12, 19th Floor<br>Judge: Honorable William H. Alsup |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED.........................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.   PRELIMINARY STATEMENT ...................................................................1

II.  CLASS COUNSEL'S FEE APPLICATION SHOULD BE APPROVED ...................4

    A.   A Reasonable Percentage of the Fund Recovered Is an Appropriate Method for Awarding Attorney's Fees in Common Fund Cases. ...................................4

    B.   Class Representative Supports the Fee Request ...........................................6

    C.   Class Counsel's Fee Request Is Fair, Adequate, and Reasonable ...........................7

        1.   The Result Achieved.......................................................................8

        2.   The Risks of Litigation ..................................................................10

        3.   The Skill Required and the Quality of Work ....................................11

        4.   The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel ...................................................................13

        5.   A 16.33% Fee Award Is Substantially Less Than the 25% "Benchmark Percentage" in the Ninth Circuit ....................................14

    D.   The Reaction of the Class to Date Supports Approval of the  Requested Attorneys' Fees .........................................................................15

    E.   The Requested Fee Is Reasonable Under a Lodestar Cross-Check ...........................16

III. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .............18

IV.  INTERVENOR'S COUNSEL'S FEES ........................................................19

V.   CONCLUSION..........................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ...................................................................... 7

*Blum v. Stenson*,
  465 U.S. 886 (1984)...................................................................................... 5

*Booth v. Strategic Realty Trust, Inc.*,
  No. 13-cv-04921-JST, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015)............... 5

*Camden I Condominium Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ....................................................................... 5

*Ching v. Siemens Indus., Inc.*,
  No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014).............. 8

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......... 7

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................. 8

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15-cv-04922, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020)........................ 16

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
  307 F.3d 997 (9th Cir. 2002) ......................................................................... 7

*Florin v. NationsBank of Georgia*,
  34 F.3d 560 (7th Cir. 1994) ........................................................................... 5

*Glass v. UBS Fin. Services, Inc.*,
  31 Fed. Appx. 452 (9th Cir. 2009).................................................................. 5

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) ......................................................................... 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................... 7

*Hefler v. Wells Fargo & Company*,
  Case No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............. 8, 14, 17

*Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................ 15

*In re Allergan, Inc. Proxy Violation Sec. Litig.*,
  Case No. 8:14-cv-2004-DOC-KESx, slip op. (C.D. Cal. Aug. 14, 2018) ................. 15

*In re Amgen Inc. Sec. Litig.*,
  Case No. CV 7-2536 PSG (PLAx), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).......... 15, 16

*In re Apple Comput. Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)..................................... 14

*In re Apple Inc. Device Performance Litig.*,
  Case No. 5:18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021)....................... 6

*In re AT&T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ................................................................................................. 5

*In re BankAtlantic Bancorp. Inc. Sec. Litig.*,
  No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)........................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................................. 7

*In re Capacitors Antitrust Litig.*,
  No. 3:17-md-02801, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ..................................... 17

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ................................................................................................. 7

*In re Cendant Corp. Litig.*,
  264 F. 3d 201 (3d Cir. 2001) ................................................................................................. 7

*In re Charles Schwab Corp. Sec. Litig.*,
  No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)................................... 17

*In re Diamond Foods, Inc., Sec. Litig.*,
  No. C 11-05386 WHA, 2014 WL 106826 (N.D. Cal. Jan. 10, 2014) ..................................... 10

*In re ECOtality, Inc. Sec. Litig.*,
  No. 13-cv-03791-SC, 2015 WL 5117618 (N.D. Cal. Aug. 28, 2015)..................................... 5

*In re Extreme Networks, Inc. Sec. Litig.*,
  Case No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)........................... 8

*In re HealthSouth Corp. Sec. Litig.*,
  No. CV-03-BE-1500-S, 2010 WL 11629090 (N.D. Ala. July 20, 2010) ................................ 7

*In re Heritage Bond Litigation*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .............................. 12, 15

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................................. 7

*In re LendingClub Sec. Litig.*,
  No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018)................................. 8

CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
– CASE NO. 3:19-CV-04744-WHA

*In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*,
   768 Fed. Appx. 651 (9th Cir. 2019) .......................................................................................... 5

*In re Network Assocs. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................................................... 7

*In re Omnicom Grp. Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ................................................................................................... 13

*In re Omnivision Techs, Inc. Sec. Litig.*,
   No. 5:11-cv-05235-RMW, 2015 WL 354243 (N.D. Cal. June 5, 2015) ................................. 8

*In re Omnivision Techs., Inc.*,
   559 F.Supp.2d 1036 (N.D. Cal. 2008) ........................................................................... passim

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .......................................................................................... 5, 7, 16

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016) .................................. 18

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ........................................ 13

*In re Snap Inc. Sec. Litig.*,
   Case No. 2:17-cv-03679-SVQ-AGR, slip op. (C.D. Cal.  Mar. 9, 2021) ............................... 14

*In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ...................................................................................................... 5

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   No. C-07-6140 EMC, 2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ................................... 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .................................................................................... 5, 10, 13

*In re Wells Fargo & Co. Shareholder Derivative Litig.*,
   445 F.Supp.3d 508 (N.D. Cal. Apr. 7, 2020) ........................................................................... 8

*In re Zynga Inc. Sec. Litig.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................... 10, 11, 12, 15

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................................. 16

*Luna v. Marvell Tech. Grp.*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .................................... 15

*Omnicare, Inc. v. Laborers District Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ........................................................................................................ 10, 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ........................................................................................ 7

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ...................................................................................... 5

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ............................................................................................ 5

*Reyes v. Experian Information Solutions, Inc.*,
  856 Fed. Appx. 108 (9th Cir. 2021) .............................................................................. 7

*Robbins v. Kroger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ................................................................................... 14

*Smilovits v. First Solar, Inc.*,
  No. CV-12-00555-PHX-DGC, 2020 WL 3636773 (D. Ariz. June 30, 2020) ............. 14

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................................ 8

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ........................................................................................ 5

*Thomas v. Magnachip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...................... 10

*Union Asset Management Holding A.G.*,
  669 F.3d 632 (5th Cir. 2012) ........................................................................................ 5

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................. 17

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ........................................................................................ 4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................................. passim

*Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................................... 5

**STATUTES AND REGULATIONS**

15 U.S.C. §78u ..................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................. 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Re Motion for Preliminary Approval of the Proposed Class Action Settlement (ECF No. 263) (the "Preliminary Approval Order"), the Class Counsel Bleichmar Fonti & Auld LLP ("Class Counsel" or "BFA") will and hereby does move the Court, before The Honorable William H. Alsup, on February 24, 2022 at 8:00 A.M., in Courtroom 12, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA, 94102, or at such other location and time as set by the Court, for an Order awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action").

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Peter E. Borkon in Support of Lead Plaintiff's Motion for Attorneys' Fees and Litigation Expenses ("Borkon Declaration" or "Borkon Decl.") and its exhibits, all other prior pleadings and papers in this Action, arguments of counsel, and such additional information or argument as may be requested by the Court.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.      Whether the Court should approve Class Counsel's application for an award of attorneys' fees; and

2.      Whether the Court should approve Class Counsel's application for payment of expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      PRELIMINARY STATEMENT

Class Counsel respectfully seeks an award of (a) attorneys' fees in the amount of $21,060,000, or approximately 16.33% of the Settlement Fund (the "Fee Application"); and (b) payment of its litigation expenses in the amount of $763,958 ("the Expense Application").[1] Class

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated April 29, 2021 (ECF No. 176-1) or the Borkon Decl. Citations to "¶ __" in this memorandum refer to paragraphs in the Borkon Declaration and citations to "Ex. __" refer to exhibits in the Borkon Declaration.

Counsel's Fee Application is based exactly on the fee proposal that was submitted to the Court at the inception of the case in connection with the RFP issued by the Police Retirement System of St. Louis ("Class Representative" or "St. Louis") and that was subsequently memorialized in a retainer agreement.[2]  Indeed, the Class Representative has reviewed the Fee Application and fully supports it.  (*See* Borkon Decl., Ex A. ¶ 10.)  The Fee Application is therefore entitled to a presumption of reasonableness.

Class Counsel's Fee Application is fair and reasonable given the skill and aggressiveness with which it prosecuted this complex securities litigation, resulting in a recovery of $129 million for the Class.  Not only were Class Counsel's efforts over two years of hard-fought litigation extensive, efficient, and ultimately successful, they were undertaken under unprecedented circumstances, with the COVID-19 pandemic beginning shortly after Class Counsel filed the Amended Complaint.  Despite the significant disruptions this imposed, Class Counsel adapted effectively to the changing circumstances and was able to continue prosecuting this litigation with utmost efficiency, as demonstrated by its aggressive and expedient prosecution of the Action and the significant result achieved for the Class.  These efforts are set forth in detail in the accompanying Borkon Declaration and include, among other things, the following:

- Class Counsel uncovered strong evidence during a comprehensive initial investigation that transformed the case into a complex accounting fraud before any public information even indicated that was the case, as alleged for the first time in the Amended Complaint filed on February 20, 2020;

- Class Counsel's uncovering of accounting fraud precipitated Granite's internal investigation first announced on March 2, 2020, which ultimately led to a restatement in February 2021 that corroborated nearly all the facts first pled in the Amended Complaint;

- Class Counsel successfully defended the Amended Complaint against Defendants' motion to dismiss;

---

[2] The fee arrangement was filed with the Court under seal in connection with St. Louis's motion to appoint BFA as Lead Counsel.  (ECF No. 57-5.)

CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
– CASE NO. 3:19-CV-04744-WHA

- Class Counsel successfully certified a class of Granite investors and later modified the Class definition after the restatement revealed that Granite's wrongdoing extended back to 2017 and earlier;

- Class Counsel aggressively pursued discovery from the Defendants and third-parties, including resolving dozens of discovery disputes and litigating one before the Court;

- Class Counsel developed a compelling evidentiary record by, among other things, reviewing and analyzing 2 million pages of documents and taking depositions that yielded key evidentiary proof;

- Class Counsel moved for summary judgment against Defendant Granite for certain financial and disclosure control statements based on Granite's restatement in February 2021, which, as noted, corroborated many of the Amended Complaint's allegations;

- Class Counsel engaged in marathon settlement negotiations with Defendants, which resulted in a settlement consisting of all of Granite's remaining insurance coverage plus $66 million in cash; and

- Class Counsel achieved preliminary approval of the settlement.

Class Counsel's Fee Application is notably well below the benchmarks established by the Ninth Circuit. In class actions resulting in a common fund, such as this one, the Ninth Circuit has established and long recognized that the "benchmark" for a reasonable percentage award is 25% of the settlement amount. Here, notwithstanding Class Counsel's considerable efforts, its success in securing a meaningful recovery, and the significant risks in the Action—all factors that could support an increase from the 25% benchmark—***Class Counsel requests a fee percentage of 16.33% of the Settlement, more than a third less than the Ninth Circuit's benchmark***.

Class Counsel's requested fee percentage is also supported by the various other factors that courts consider when determining the reasonableness of a fee request. These factors include the quality of the result achieved, the risks presented by the litigation, the skill required and quality of

Class Counsel's efforts, the contingent nature of the fee, awards made in similar cases, and the reaction from class members to the fee request.

The Fee Application is also reasonable when viewed in light of Class Counsel's lodestar. As detailed in the accompanying Borkon Declaration, and the exhibits thereto, Class Counsel has thus far dedicated a total of 12,512 hours of attorney and other professional staff time to bring the Action to this successful resolution, which resulted in a lodestar totaling $7,079,129. The time and work reflected in Class Counsel's lodestar was reasonable and necessary for the effective and efficient prosecution of the Action. Indeed, Class Counsel's lodestar was reviewed by a neutral, third-party expert, Ms. Jill Dessalines, who concluded, among other things, that "this Lawsuit was prosecuted with a very high degree of efficiency and with reasonable amounts of time spent on its overall prosecution." (Borkon Decl., Ex. F, Dessalines Declaration, ¶¶ 31.)

Class Counsel's Expense Application is also fair and reasonable. As explained in the Borkon Declaration, the expenses were reasonable and necessary for the prosecution and resolution of the Action and are of the type that are routinely charged to clients in non-contingent litigation largely consisting of payments to experts, settlement administration, and e-discovery hosting and support.

For the reasons set forth herein, as well as in the Borkon Declaration, Class Counsel respectfully requests that the Court approve its Fee Application and Expense Application.

## II.    CLASS COUNSEL'S FEE APPLICATION SHOULD BE APPROVED

**A.    A Reasonable Percentage of the Fund Recovered Is an Appropriate Method for Awarding Attorney's Fees in Common Fund Cases.**

BFA seeks a reasonable percentage of the fund recovered as attorneys' fees in this Action for its efforts in creating the common fund for the benefit of the Class. "The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The "equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it," is the guiding principle of the

common fund doctrine.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

"[U]nder the common fund doctrine … a reasonable fee is based on a percentage of the fund bestowed on the class."  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  The Ninth Circuit has expressly and repeatedly approved the use of the percentage method in common fund cases. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method"); *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 Fed. Appx. 651, 653 (9th Cir. 2019) (approving district court's use of the "percentage-of-the-fund method"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) (same); *Glass v. UBS Fin. Services, Inc.*, 31 Fed. Appx. 452, 457 (9th Cir. 2009) (same); *see also Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-04921-JST, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("the Ninth Circuit permits district courts 'to award attorneys a percentage of the common fund'"); *In re ECOtality, Inc. Sec. Litig.*, No. 13-cv-03791-SC, 2015 WL 5117618, at *3 (N.D. Cal. Aug. 28, 2015) (the percentage method is "the typical method of calculating class fund fees").  Additionally, the majority of other circuit courts have favored the percentage of the fund method in common fund cases.[3]

When  choosing the percentage method to award attorneys' fees, courts in the Ninth Circuit recognize that the percentage method is consistent with the typical practice in the private marketplace of basing contingency fees on a percentage of recovery.  Courts also recognize that it more closely aligns with the attorneys' interest in receiving a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.  *See In re Apple Inc. Device Performance Litig.*, Case No. 5:18-md-02827-EJD, 2021 WL 1022866, at *2 (N.D. Cal.

---

[3] Two Circuit Courts of Appeal have ruled that the percentage of recovery method is mandatory in common fund cases. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) and *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  The vast majority of the other Circuit Courts of Appeals have also endorsed the percentage of recovery method in common fund cases.  *See In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Union Asset Management Holding A.G.*, 669 F.3d 632, 643-44 (5th Cir. 2012); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Florin v. NationsBank of Georgia*, 34 F.3d 560, 566 (7th Cir. 1994); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).

CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES – CASE NO. 3:19-CV-04744-WHA

Mar. 17, 2021) ("The percentage-of-the-fund method confers 'significant benefits … including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members and reducing the burden on the courts that a complex lodestar calculation requires'").  In addition, the PSLRA endorses a percentage fee. Specifically, it states,  "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).

**B.    Class Representative Supports the Fee Request**

Class Counsel's Fee Application is based exactly on the terms of the fee arrangement that was agreed upon by the Court-appointed Class Representative, that was submitted to the Court for review under seal (*see* ECF No. 57-5), and that was memorialized in a retainer agreement between the Class Representative and Class Counsel.    (Borkon Decl., Ex. A ¶¶ 11-12.)    The fee arrangement was part of Class Counsel's competitive bid in response to the Class Representative's Court-directed RFP, and was one of the reasons (among others) the Class Representative selected BFA to serve as Class Counsel.  As previously explained by Mark E. Lawson, St. Louis's Executive Director, "BFA's proposed fee structure was markedly lower than that of any other firm, with BFA's proposed contingent fee structure ranging from a low of three percent to a high of eighteen percent.  No other law firm presented any proposed contingent fee percentage below ten percent and no other law firm had their highest fee as low as eighteen percent."  (Borkon Decl. ¶ 8; ECF No. 60 ¶ 13.)    Further, having closely supervised and monitored Class Counsel's prosecution and settlement of the Action, (*see* Borkon Decl., Ex. A ¶ 9), the Class Representative has evaluated Class Counsel's Fee Application and fully supports it (Borkon Decl., Ex. A ¶ 10).

Under these circumstances – adherence to a fee arrangement made early in the litigation by a sophisticated institutional lead plaintiff during a competitive selection process and with the support of a lead plaintiff that closely monitored the litigation – the Fee Application should be entitled to a presumption of reasonableness.  As courts have explained, "under the PSLRA, courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected

lead counsel." *In re Cendant Corp. Litig.*, 264 F. 3d 201, 282 (3d Cir. 2001); *see also In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) (noting the "Reform Act's underlying assumption that, at least in the typical case, a properly-selected lead plaintiff is likely to do as good or better job than the court at [choosing counsel and a retainer agreement]").   That is because Congress, in enacting the PSLRA, sought to encourage investors with significant financial interests in the litigation – such as St. Louis – to serve as lead plaintiffs and play an active role in  supervising and directing the litigation, including selecting, retaining, and overseeing counsel.  *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999).[4]  Here, the fee agreement was the outcome of the competitive RFP process that the Court directed Class Representative to undertake and is still fully supported by the Class Representative. For all these reasons, the Fee Application should be entitled to a presumption of reasonableness.

**C.**    **Class Counsel's Fee Request Is Fair, Adequate, and Reasonable**

The "benchmark" percentage attorneys' fee award in common-fund cases in the Ninth Circuit is 25% of the total settlement fund.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *see also Reyes v. Experian Information Solutions, Inc.*, 856 Fed. Appx. 108, 110 (9th Cir. 2021) ("When the percentage method is used, 25% of the fund is the 'benchmark' award."); *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) ("In the percentage method, the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark."); *In re Online DVD-Rental*, 779 F.3d at 949 ("in this circuit, the benchmark percentage is 25%"); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award"); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent "benchmark" in percentage-of-the-fund cases"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)

---

[4] *See also In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S, 2010 WL 11629090, at *2 (N.D. Ala. July 20, 2010) ("This involvement of sophisticated lead plaintiffs, such as those in this case, in negotiating and thus exercising control over fees represents one of the biggest reforms enacted by Congress in [the] PSLRA."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014),  ("A settlement reached "under the supervision and with the endorsement of a sophisticated institutional investor … is entitled to an even greater presumption of reasonableness.'"), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). Further, courts in this district have held that percentage award requests "below the 'benchmark' percentage for a reasonable fee award in the Ninth Circuit" are "presumptively reasonable." *Hefler v. Wells Fargo & Company*, Case No. 16-cv-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) (citing *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014). As noted above, the Fee Application here of 16.33% is approximately 35% less than the benchmark established by the Ninth Circuit and is therefore "presumptively reasonable."

Nevertheless, "a district court must ensure that attorney's fees are 'fair, adequate, and reasonable,' even if the parties have entered into a settlement agreement that provides for those fees." *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *1 (N.D. Cal. Sept. 24, 2018) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003)); *see also Vizcaino*, 290 F.3d at 1048 ("Selection of the [25%] benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."). In the Ninth Circuit, "[r]elevant factors to a determination of the percentage ultimately awarded include '(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.'" *In re Extreme Networks, Inc. Sec. Litig.*, Case No. 15-cv-04883-BLF, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019); *see also Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs, Inc. Sec. Litig.*, No. 5:11-cv-05235-RMW, 2015 WL 354243, at *1 (N.D. Cal. June 5, 2015). Each of these factors support the Fee Application.

### 1. The Result Achieved

Courts typically consider the results achieved to be the most important factor when assessing a request for attorneys' fees. *See, e.g., In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F.Supp.3d 508, 522 (N.D. Cal. Apr. 7, 2020) ("The first and 'most critical factor [in determining attorney's fees] is the degree of success obtained.'"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The overall result and benefit to the class from the litigation is the most important factor in granting a fee award."); *In re*

1  *Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (the results achieved "is the

2  most critical factor in granting a fee award").

3        Here, there can be no question that Class Counsel has obtained an outstanding recovery in

4  the face of substantial risk and determined opposition.  The $129 million recovery is an excellent

5  result for the Class, both quantitatively and when considering the risk of a lesser (or no) recovery

6  if the case proceeded through a decision on summary judgment, trial, and likely appeals.  Indeed,

7  at the time it was reached, the Settlement was one of only three securities class action settlements

8  in this District since 2011 to exceed $125 million.[5]  What's more, the $129 million recovery

9  represents approximately 20-30% of the estimated range of recoverable damages of $424 million

10 to $670 million. (*See* ECF No. 176, at 13.)  This percentage of recovery far exceeds – by nearly

11 400% – the median 4.6% recovery in cases alleging claims under the Exchange Act of 1934

12 between 2011 and 2021.  *See* Cornerstone Research, *Securities Class Action Settlements, 2020*

13 *Review and Analysis*, at 7 ("Cornerstone Report") (available at

14 https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-

15 Review-and-Analysis.pdf); *see also* NERA Economic Consulting, *Recent Trends in Securities*

16 *Class Action Litigation: 2020 Full-Year Review*, at 20 (1.9% median ratio of settlement to investor

17 losses in securities class actions between 2012 and 2020) (available

18 https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-

19 Year_Trends_012221.pdf).[6]

20       As a percentage of the recoverable damages, the $129 million settlement exceeds or

21 compares very favorably to recent securities class action settlements in this District and before this

22 Court. *See, e.g., In re Lendingclub Sec. Litig.,* No. 16-cv-2627-WHA, ECF No. 383 (N.D. Cal.

---

24 [5] The other two being *Hefler v. Wells Fargo & Co.*, No. 3:16-cv-05479 (Tigar, J.), which settled
   in 2018 for $480 million, and *In re Charles Schwab Corp. Sec. Litig.*, No. 3:08-cv-01510 (Alsup,
25 J.), which settled in 2011 for $235 million.  In September 2021, a settlement of $809.5 million was
   announced in *In re Twitter Inc. Securities Litigation*, No. 4:16-cv-5314 (N.D. Cal.) (Tigar, J.),
26 though as of this date, the preliminary approval motion has not been filed.

27 [6] Because the Settlement releases the claims under Section 11 of the Securities Act of 1933 raised
   in the *Nasseri* litigation, it also bears noting that the 20-30% recovery also far exceeds – again by
28 nearly 400% – the median 5.4% recovery in cases alleging claims under both Section 10(b) of the
   Exchange Act and Section 11 of the Securities Act.  *See id.*

CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
– CASE NO. 3:19-CV-04744-WHA

July 20, 2018) (granting final approval of settlement of approximately 17% of estimated recoverable damages) (Alsup J.); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *2 (N.D. Cal. Nov. 21, 2016) (granting final approval of settlement representing 15% of plaintiff's likely recovery at trial) (Tigar, J.); *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (granting final approval of settlement representing approximately 14% of estimated damages) (Corley, J.); *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2014 WL 106826, at *2 (N.D. Cal. Jan. 10, 2014) (granting final approval of settlement consisting of $11 million in cash and stock valued at $85.1 million at the time of settlement where total estimated damages were $430 million – or approximately 22%) (Alsup J.).

      **2.      The Risks of Litigation**

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision*, 559 F.Supp.2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299-1301. Here, the fee request is reasonable in light of the significant risks assumed by Class Counsel in prosecuting this complex and expansive Action on a fully contingent basis. Class Counsel undertook the representation of the Class knowing that the litigation could last for years, would require the substantial investment of time by attorneys and support staff, and provide no guarantee of compensation. Class Counsel also assumed the risk of advancing all costs and expenses necessary to successfully prosecute the Action, once more knowing that it may not have been reimbursed for such expenses.

As discussed in the Borkon Declaration, there were many substantial challenges to succeeding in this litigation. *See* ¶¶ 125-127. For example, Defendants have vigorously maintained throughout the litigation that the alleged false and misleading statements were estimates, forecasts, and opinions. If a jury agreed with Defendants' position, Class Counsel would have been required to present a heightened level of proof under *Omnicare, Inc. v. Laborers District Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). *Id.* ¶ 126.

Class Counsel also faced meaningful trial risks in proving scienter and loss causation as required under Section 10(b). While Granite announced a Restatement of its financial results on February 22, 2021, the Restatement did not conclude that Granite acted intentionally. Moreover, the risks were significant because there were no claims brought against Granite's external auditor; neither the SEC nor the DOJ brought charges against any Granite employees or affiliates; there was turnover in Granite's senior management; and there are no allegations of insider trading. *Id*. There is no question that absent a settlement, Class Counsel faced a substantial risk of no recovery. This factor further supports the Fee Application.

### 3.    The Skill Required and the Quality of Work

The "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F.Supp.2d at 1047). "'This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Id*. As is more thoroughly discussed in the Borkon Declaration, from the outset of this litigation Class Counsel worked tirelessly to maximize the recovery for the Class and ensure a smooth claims administration process. *Id*. ¶¶ 12-96.

Class Counsel's efforts included: (i) conducting an in-depth investigation including analyzing Granite's SEC filings and public statements, media reports, analyst reports, historic stock price data, lodging freedom of information requests with various public authorities and reviewing materials provided by those authorities, and working with investigators to locate former Granite employees that possessed relevant information (¶ 13); (ii) filing an Amended Complaint that for the first time alleged that Granite committed accounting fraud, which precipitated Granite's internal investigation that led to the restatement, and which corroborated nearly all the Amended Complaint's allegations (¶¶ 12-17); (iii) responding to and largely defeating Defendants' motion to dismiss which argued, among other things, that the Amended Complaint failed to allege any actionable misrepresentations, failed to raise a strong inference of scienter, and that the alleged statements were protected by the safe harbor provision of the PSLRA (¶¶ 18-24); (iv) conducting extensive discovery including 92 requests for productions of documents by Defendants, subpoenas

of various non-parties including Granite's external auditor and certain joint venture partners, the review of over 100,000 documents totaling nearly 2 million pages, taking three depositions and preparations for 13 additional scheduled depositions, and numerous discovery disputes (¶¶ 27-52); (v) successfully obtaining Class certification (¶¶ 56-63); (vi) working with experts to assist in the prosecution of the case, including, among other things, preparing a market efficiency report in support of class certification, preparing for substantive expert reports, preparing for settlement negotiations, and preparing the Plan of Allocation and the Revised Plan of Allocation (¶¶ 53-55); (vii) filing a motion for partial summary judgment against Defendant Granite for certain financial and disclosure control statements (¶¶ 64-68); (viii) extensive settlement negotiations mediated by Magistrate Judge Spero (¶¶ 69-71); (ix) litigating and obtaining preliminary approval of the settlement (¶¶ 72-87); and (x) working closely with Court-appointed notice and claims administrator, Epiq Class Action and Claims Solutions, Inc., to ensure a smooth and effective claims administration process (¶¶ 88-96). Class Counsel's extensive efforts and skill enabled it to persuade Defendants to settle the Action on terms highly favorable to the Class.

Additionally, "the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work." *In re Heritage Bond Litigation*, No. 02-ML-1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005); *see also Zynga*, 2016 WL 537946, at *17 ("The quality of opposing counsel is also relevant to the quality and skill that class counsel provided."). Here, Class Counsel was opposed by highly experienced and sophisticated lawyers from five of the nation's most prestigious law firms: Munger, Tolles & Olsson LLP (Defendant Granite); O'Melveny & Myers LLP (Defendant Roberts); Wilmer Cutler Pickering Hale and Dorr LLP (Defendant Desai); and Dechert LLP/Kobre & Kim LLP (Defendant Krzeminski). Defendants' counsel litigated the Action skillfully and aggressively, with defense costs funded by extensive insurance coverage. In the face of this formidable and well-financed opposition, Class Counsel was able to strongly develop its case so as to persuade Defendants to settle for a substantial sum. This factor supports the Fee Application.

As does Class Counsel's experience and reputation as a well-qualified and experienced complex securities litigation firm. As noted in the Borkon Declaration, BFA is a highly qualified

law firm that is well-experienced in prosecuting securities class actions.  *See* ¶¶ 122-23; Ex. G (BFA Firm Resume).  The Firm has recovered more than $18 billion for its clients since its founding in 2014.[7]  ¶ 122.  In fact, the Class Representative selected BFA to serve as lead counsel and later class counsel based in large part on its stellar reputation and history of successes.  ¶ 124.

### 4.    The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

The contingent nature of the fee, the financial burden on counsel throughout the litigation, and the risk they will receive little or no compensation for their efforts is an important consideration when determining an award of attorneys' fees.  *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour on a flat fee.").

The risks to recovery for a class and its counsel in a complex securities class action such as this Action are significant.  Indeed, there are many examples of cases where plaintiffs' counsel took on the significant risk of pursuing claims of violations of the Federal securities laws on a contingent basis, expended thousands of hours and millions of dollars, yet received no compensation at all despite their efforts.  *See, e.g., In re Omnicom Grp. Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after two years of litigation); *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation).  Even plaintiffs who get past summary judgment and succeed at trial may have judgment in their favor overturned on a post-

---

[7] BFA's recent matters include a $234 million recovery in *In re MF Global Holdings Sec. Litig.*, 1:11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Financial Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), the largest securities class action recovery ever achieved in the Eastern District of Virginia; and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 1:12-cv-02121-LAK (S.D.N.Y.).

trial motion or on appeal. *See, e.g., In re BankAtlantic Bancorp. Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law after jury verdict in favor of plaintiffs); *Robbins v. Kroger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict for plaintiffs); *In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (court entered judgment for the individual defendants and ordered a new trial with respect to the corporation after a jury verdict for the plaintiffs).

Here, Class Counsel committed significant time and expense to vigorously and successfully prosecuting this Action on behalf of the Class for nearly two years. Because the fee in this Action was entirely contingent, had Class Counsel failed to overcome Defendants' motion to dismiss or failed at certifying the Class, Class Counsel would have received nothing for its diligent prosecution of the Action. An adverse jury verdict and/or unfavorable appellate decisions also threatened to leave Class Counsel empty-handed, despite considerable investments of time and resources. Accordingly, the contingent nature of Class Counsel's representation strongly favors approval of the Fee Application.

### 5. A 16.33% Fee Award Is Substantially Less Than the 25% "Benchmark Percentage" in the Ninth Circuit

As discussed above, the Ninth Circuit has established that the "benchmark" percentage attorneys' fee award in common-fund cases is 25% of the total settlement fund. Courts typically consider attorneys' fees awarded in comparable cases to determine the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1050, n.4. The requested 16.33% fee is reasonable when compared to recent fees awarded in comparable complex securities cases in the Ninth Circuit. *See, e.g., In re Snap Inc. Sec. Litig.*, Case No. 2:17-cv-03679-SVQ-AGR, slip op. at 1 (C.D. Cal. Mar. 9, 2021), ECF No. 400 (awarding 25% of $154.7 million settlement); *Smilovits v. First Solar, Inc.*, No. CV-12-00555-PHX-DGC, 2020 WL 3636773, at *1 (D. Ariz. June 30, 2020). ECF No. 731 (awarding 18.83% of $350 million settlement); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *16 (awarding 20% of $480 million settlement); *In re Allergan, Inc. Proxy Violation Sec. Litig.*, Case No. 8:14-cv-2004-DOC-KESx, slip op. at 2 (C.D. Cal. Aug. 14, 2018), ECF No. 637 (awarding 21% of $250 million settlement); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA,

2018 WL 1900150, at *5 (N.D. Cal. Apr. 20, 2018) (awarding a fee of $13.6 million  or approximately 18.14%, of $75 million settlement);  *In re Amgen Inc. Sec. Litig.*, Case No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *9-10 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement).

**D.     The Reaction of the Class to Date Supports Approval of the<br>        <u>Requested Attorneys' Fees</u>**

        Courts also consider the reaction of the class when deciding whether to award the requested attorneys' fees. *See e.g., Zynga*, 2016 WL 537946, at *18 ("the lack of objection by any Class Members also supports" the fee award); *Heritage*, 2005 WL 1594404, at *21 ("[t]he existence of absence of objectors to the requested attorney's fee is a factor in determining the appropriate fee award"); *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("the lack of objection from any Class Member supports the attorneys' fees award").

        The reaction of the Class to date supports Class Counsel's Fee Application.  For starters, as already noted, the Class Representative, which has committed "to actively prosecuting the action in the best interest of the Class" (ECF No. 118 ¶ 6), has reviewed the Fee Application and fully supports it.

        What's more, as of December 15, 2021, the Claims Administrator sent a total of 54,387 Notice Packets to potential Class Members advising them that Class Counsel would apply for attorneys' fees in an amount not to exceed 18% of the Settlement Fund, or $23,220,000.  ¶ 129, Ex. H ¶ 8.  The Court-approved Summary Notice to the Class was also published on October 25, 2021 in the *Wall Street Journal* and *IBD Weekly* and transmitted over *PR Newswire*.  ¶ 129, Ex. H ¶ 6.  The Summary Notice also advised investors that Class Counsel would apply for attorney's fees in an amount not to exceed 18% of the Settlement Fund.  ¶ 129.  While the deadline for filing any objections does not expire until January 5, 2022, to date no objections to the potential fee request as set forth in the Notice have been received.  This lack of objections is evidence that the Fee Application – which seeks less than the amount indicated in the Notice – is reasonable.  *See, e.g., Zynga*, 2016 WL 537946, at *18 (no objections supported a 25% fee award); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (no

objections supported a 30% fee award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objections supported a 28% fee award).

**E.      The Requested Fee Is Reasonable Under a Lodestar Cross-Check**

"As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048.  Although such an analysis "is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with the lodestar amount can demonstrate the fee request's reasonableness." *In re Amgen*, 2016 WL 10571773, at *9.  "The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *In re Online DVD-Rental*, 779 F.3d at 949.

Here, Class Counsel spent 12,512.04 hours of attorney and paraprofessional time prosecuting this action on the Class' behalf.  ¶ 106, Exs. C, D, & E.  The resulting lodestar is $7,079,129 representing a multiplier of 2.97 for the $21,060,000 requested fee.  *Id*.  As explained in the Borkon Declaration, the lodestar information is based on contemporaneous time records prepared and maintained in the ordinary course by BFA.  ¶ 111.  In addition, the hourly rates used to calculate the lodestar range from $330 to $985. ¶ 115.  These rates are the usual and customary rates set by BFA for each individual timekeeper, are the same as, or comparable to, the rates set by peer firms for attorneys of similar skill and experience, and likely compare favorably to the non-contingent rates charged by Defendants' counsel in this Action.  ¶¶ 115-16.

Class Counsel's Fee Application and its relation to the lodestar are reasonable when compared to past common fund cases in the Ninth Circuit.  The 2.97 multiplier is well within the range of multipliers typically upheld by Ninth Circuit courts.  *See Vizcaino*, 290 F.3d at 1051 n. 6 (finding that most common fund cases apply a multiplier between 1 and 4, and upholding a 3.65 multiplier); *see also, e.g., Dickey v. Advanced Micro Devices, Inc*., No. 15-cv-04922, 2020 WL 870928, at *8-9 (N.D. Cal. Feb. 21, 2020) (Gilliam, J.) ("The lodestar multiplier [of 3.08] also supports the reasonableness of the fee request and falls within the range of reasonableness"); *Hefler*

*v. Wells Fargo & Company*, 2018 WL 6619983, at \*14 (Tigar, J.) ("Because Plaintiffs' Counsel's lodestar multiplier [of 3.22] is within the range of reasonableness, it supports the requested award"); *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801, 2018 WL 4790575, at \*6 (N.D. Cal. Sept. 21, 2018) (Donato, J.) ("a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at \*2 (N.D. Cal. Feb. 18, 2014) (Chen, J.) (approving a 4.3 multiplier); *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at \*8 (N.D. Cal. Apr. 19, 2011) (Alsup J.) ("Given the circumstances of this case, a risk multiplier of 2.68 yields a fair and reasonable fee award for class counsel under a lodestar calculation"); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (Williams, J.) ("[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation").

Further, Class Counsel retained Ms. Jill Dessalines, a highly experienced neutral third-party to review and opine on the reasonableness of its time entries and lodestar calculations. *See* ¶¶ 117-121. Ms. Dessalines is the current Chief Litigation Strategist at Prometheus Partners, and a former Senior Vice President & Assistant General Counsel of the McKesson Corporation. Ms. Dessalines is also the founder of Strategic Advice for Successful Lawyers. She is a recognized and respected master litigation strategist in high stakes litigation, and represented a Fortune 14 corporation for over 16 years where she managed and successfully resolved multi-billion-dollar privacy, class action matters. In that role, Ms. Dessalines supervised and trained outside counsel and created outside counsel management policy. Among other things, she reviewed and analyzed monthly fee bills on an almost daily basis for 17 years, including negotiating fee agreements and overseeing case budgets, monitoring and enforcing adherence to case management and billing policies, reviewing, analyzing, and approving or rejecting and negotiating monthly bills for outside counsel fees and costs, and assessing how much time should be spent on litigation tasks. (Borkon Decl., Ex. F, Dessalines Declaration, ¶¶ 3-8.)

After a thorough review of pertinent case documents and Class Counsel's time entries (as explained further in her declaration), Ms. Dessalines concluded that Class Counsel's time entries and lodestar calculations are fair and reasonable. In particular, and among other things, she

concluded that within her experience, the Litigation "was prosecuted with a very high degree of efficiency and with reasonable amounts of time spent on its overall prosecution," that "Class Counsel prosecuted the Lawsuit expeditiously," that "Class Counsel achieved the goals of the Lawsuit," that "the ratio of time spent on each task category as compared to the total time spent on the Lawsuit was reasonable and appropriate," that "the ratio of partner time to associate and support staff time across all task categories was reasonable and appropriate," and that "the number of billers, and their levels of expertise, was reasonable and appropriate across all of the task categories." (*Id.*, Ex. F., ¶¶ 31-38.)

Ms. Dessalines has provided the Court with a declaration detailing her expertise, methodology, and conclusions. (*Id.*, Ex. F.)

### III.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel also respectfully requests reimbursement of $763,958, plus accrued interest, for expenses incurred thus far in prosecuting this Action.  *See*  ¶¶ 130-140.  These expenses are categorized in Exhibit I to the Borkon Declaration.

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Omnivision*, 559 F. Supp. 2d at 1048.  Since the categories of expenses for which Class Counsel seek payment here are of the type routinely charged to hourly clients and were required to prosecute this Action, they should be paid out of the common fund. *See In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *10-11 (N.D. Cal. Dec. 19, 2016) ("Attorneys who create a common fund for the benefit of the class are entitled to be reimbursed for their out of pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action.").

As explained in the Borkon Declaration, the Expense Application consists primarily of costs incurred for the retention of professional experts and an e-discovery vendor.  Of the total requested expenses, Class Counsel expended $343,192, or approximately 45%, on two experts, one to provide expert advice and testimony on damages and loss causation issues and one to

provide expert advice and testimony on accounting issues.  ¶ 134(a).  Class Counsel also expended $117,275, or approximately 15.4%, on the retention of an e-discovery vendor that hosted, processed, and searched Defendants' and third-party documents.  The e-discovery vendor also provided services and technology that helped make it possible for Class Counsel to effectively conduct document reviews remotely during the pandemic.  ¶ 134(b).

Other necessary expenses include, but are not limited to, $134,761 (or about 17.6% of the total) incurred to date by Epiq in connection with the notice and claims administration process, (¶ 134(d));[8] $14,341 (or about 1.9% of the total) for costs incurred in obtaining court transcripts necessary to effectively litigate the action and in retaining Veritext Legal Solutions to facilitate and transcribe the remote depositions taken in this case, including providing remote exhibit sharing technology as well as remote real-time transcription services (¶ 134(e)); $59,297 (or about 7.7% of the total) for the services of Gryphon Strategies, which is an investigative firm that assisted in the Class Representative and Class Counsel's pre-Amended Complaint investigation (¶ 134(f)); and $3,356 (or about 0.44% of the total) for "Computer Research" which involves out-of-pocket payments to vendors for online research done in connection with this litigation. (Ex. I.)

Class Counsel's request for $763,958 is about 20% less than the maximum of $950,000 estimated in the Notice and disclosed to the Class.  To date there have been no objections by Class Members to Class Counsel's expense request. (¶ 138.)

Moreover, as noted in the Declaration of Mark E. Lawson, the Class Representative believes that the litigation expenses for which BFA is seeking reimbursement are reasonable, and represent costs and expenses necessary for the prosecution of the case.  (Borkon Decl., Ex. A ¶ 13.)

## IV.    INTERVENOR'S COUNSEL'S FEES

Class Counsel recognizes that counsel for the Intervenor Arash Nasseri should be reasonably compensated for the work it performed, and awaits the Court's guidance on the issue.

---

[8] The Expense Application covers Epiq costs and expenses through December 15, 2021.  Epiq may generate additional costs and fees as the notice and claims process proceeds.  Epiq will apply directly to the Court for payment of any costs and fees incurred after December 15, 2021

## V.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully requests that the Court award attorneys' fees of $21,060,00, or approximately 16.33% of the Settlement Fund, and litigation expenses in the amount of $763,958.

Dated: December 15, 2021

Respectfully submitted,

By: /s/ *Peter E. Borkon*
**BLEICHMAR FONTI & AULD LLP**
Peter E. Borkon (Bar No. 212596)
pborkon@bfalaw.com
555 12th Street, Suite 1600
Oakland, California 94607
Tel.: (415) 445-4003
Fax: (415) 445-4020

– and –

Javier Bleichmar (*pro hac vice*)
jbleichmar@bfalaw.com
7 Times Square, 27th Floor
New York, New York 10036
Tel: (212) 789-1340
Fax: (212) 205-3960

*Counsel for Class Representative*
*the Police Retirement System of St. Louis*
*and Class Counsel*